UNITED STATES of America, Appellee,

v.

Donald Lee SOLLARS, Appellant.

UNITED STATES of America, Appellee,

v.

Richard MARZULLO, Appellant.

Nos. 92–1509, 92–1518.

United States Court of Appeals,
Eighth Circuit.

Submitted Sept. 18, 1992.

Decided Nov. 9, 1992.

Michael D. Gibbons, Kansas City, Mo., argued, for Donald Sollars.

William P. Grant, St. Louis, Mo., argued, for Richard Marzullo.

Marietta Parker, Asst. U.S. Atty., Kansas City, Mo., argued (Thomas H. Newton, Asst. U.S. Atty., on the brief), for U.S.

Before RICHARD S. ARNOLD, Chief Judge, FAGG, and MAGILL, Circuit Judges.

MAGILL, Circuit Judge.

Appellants Richard Marzullo (building owner) and Donald Sollars (hired torcher) appeal from jury convictions of arson, and of conspiracy to commit both arson and mail fraud. Marzullo also appeals from a jury conviction of mail fraud. Marzullo

claims the trial court[1] erred in denying his motion for a separate trial because of inculpatory co-conspirator statements. Sollars raises several claims of error. We affirm.

## I. BACKGROUND

In 1988, appellant Richard Marzullo (Marzullo) and his wife, Debra, purchased a drive-through convenience store, the Milk Barn. Debra surrendered the liquor license for the Milk Barn in December 1989 for regulatory violations. Accounting records for the Milk Barn reveal that sales dropped after the liquor license was surrendered. Marzullo stated several times to a neighbor that the business was "going under" and attempted, without success, to sell it in 1990. In June 1990, the Marzullos nearly doubled their building and contents insurance. In July 1990, appellant Donald Sollars (Sollars) told a friend, Nancy Akines, that Marzullo was going to pay him to burn the Milk Barn.

On the evening of August 18, 1990, Sollars told Akines the Milk Barn would burn that night. Akines drove Sollars, who was carrying flares and a dishwashing liquid bottle filled with gasoline, to an alley a block from the Milk Barn. Sollars returned to the car smelling of gasoline. Akines and Sollars then left and told friends the Milk Barn was on fire. The Milk Barn was severely damaged by fire that night. A fire fighter found a bed sheet soaked with diesel fuel on the roof of the Milk Barn. An expert in the cause and origin of fires determined the fire had been deliberately set and the sheet was used to help the fire get from one area of the roof to another. Marzullo and his wife later filed a claim with Travelers Insurance Company for the damage to the Milk Barn.

Marzullo and Sollars both were charged with: Count One, conspiracy to commit arson and mail fraud, in violation of 18 U.S.C. §§ 371, 844(i) and 1341; Count Two, arson, in violation of 18 U.S.C. § 844(i); and Count Three, mail fraud, in violation of 18 U.S.C. § 1341. They were tried together before a jury. The jury found Marzullo guilty on all counts, and found Sollars guilty of Counts One and Two. Marzullo and Sollars both appeal.

## II. DISCUSSION

### A. Marzullo

Marzullo strenuously argues the district court erred by not granting his motion to sever his trial from Sollars'. In this motion, he alleged various statements made by Sollars would be prejudicial. He also alleged that the prejudicial effect of the statements could not be dispelled by cross-examination if Sollars did not take the stand. The magistrate judge denied the motion for severance, and the trial court adopted the order denying the motion. Sollars did not testify at trial.

Defendants who are charged in a conspiracy should normally be tried in the same trial. *United States v. Davis*, 882 F.2d 1334, 1340 (8th Cir.1989), *cert. denied*, 494 U.S. 1027, 110 S.Ct. 1472, 108 L.Ed.2d 610 (1990). A trial court's denial of a motion to sever will be overturned on appeal only if the trial court abused its discretion, causing clear prejudice to the defendant's right to a fair trial. *United States v. Johnson*, 962 F.2d 1308, 1311 (8th Cir.), *cert. denied*, —— U.S. ——, 113 S.Ct. 358, 121 L.Ed.2d 271 (1992).

Marzullo claims if the trials had been severed, Sollars' statements which were admissible in the joint trial would be inadmissible hearsay. Therefore, Marzullo argues, he suffered clear prejudice to his right to a fair trial. We review these statements only to determine whether they would have been admissible if Marzullo had been tried separately, and if inadmissible, whether they caused Marzullo clear prejudice. Out-of-court statements are not hearsay under the co-conspirator exception and are admissible as evidence if established by a preponderance of the evidence that: (1) a conspiracy existed; (2) the defendant and the declarant were members of the conspir-

---

**1.** The Honorable Elmo B. Hunter, Senior United States District Judge for the Western District of Missouri.

acy; and (3) the statements were made in the course and in furtherance of the conspiracy. *See Bourjaily v. United States,* 483 U.S. 171, 175, 107 S.Ct. 2775, 2778, 97 L.Ed.2d 144 (1987); Fed.R.Evid. 801(d)(2)(E). We address in turn each of the statements Marzullo claims were prejudicial and find the trial court did not abuse its discretion.

■ 1. *Nancy Akines' co-conspirator testimony.* Akines testified she drove Sollars to the Milk Barn the night of the fire and had agreed she would not discuss her or Sollars' involvement in setting the fire. Marzullo objects to Akines' testimony that Sollars told her Marzullo was going to pay him for burning the Milk Barn.

Any relevant evidence, including the statements at issue, may be considered when determining whether a conspiracy existed and whether the defendant, Marzullo, and the declarant, Sollars, were members of it. *Bourjaily,* 483 U.S. at 180–81, 107 S.Ct. at 2781; *United States v. Cerone,* 830 F.2d 938, 948 (8th Cir.1987), *cert. denied,* 486 U.S. 1006, 108 S.Ct. 1730, 100 L.Ed.2d 194 (1988). The existence of a conspiracy is established by showing a "likelihood" of illicit association between the defendant and the declarant. *United States v. Lyon,* 959 F.2d 701, 704 (8th Cir.1992). Michael Sollars (Michael), appellant Sollars' brother, testified Marzullo had asked him for dynamite to blow up the Milk Barn, and offered to pay him for the explosives. Sollars was present and heard the conversation between Michael and Marzullo. A government witness testified that he saw both Sollars and Marzullo on the roof of the Milk Barn hours before the fire. An expert determined that materials which fire fighters found on the roof were used to set the fire. Akines' statement, taken in conjunction with this other evidence, is sufficient to establish a likelihood that a conspiracy existed. Her statement also identified both Marzullo and Sollars as members of the conspiracy.

Sollars' statement to Akines clearly was made during the course of the conspiracy. In addition, Sollars' statement furthered the conspiracy by identifying the co-conspirators' roles in the conspiracy, revealing the progress of the conspiracy, and explaining payment. *United States v. Handy,* 668 F.2d 407, 408 (8th Cir.1982). We believe the statement was intended to, and ultimately did, convince Akines to act as a co-conspirator. Akines' testimony, therefore, would have been admissible evidence if Marzullo had been tried alone.

■ 2. *Roy White's co-conspirator testimony.* White entered the conspiracy during the concealment stage by agreeing to provide Sollars with an alibi for the night of the fire. In the course of discussing the alibi, Sollars stated that Marzullo made suggestions regarding how to set the fire and was going to pay him for setting the fire.

Whether a statement was made during the course of a conspiracy is determined by the facts of the case at issue. *United States v. Varella,* 692 F.2d 1352, 1362 (11th Cir.1982), *cert. denied,* 464 U.S. 838, 104 S.Ct. 127, 78 L.Ed.2d 124 (1983). This conspiracy, which involved a series of transactions, continued through the concealment stage of the arson. Sollars' statements to White, therefore, were made in the course of the conspiracy. *See United States v. Lewis,* 759 F.2d 1316, 1343 (8th Cir.), *cert. denied,* 474 U.S. 994, 106 S.Ct. 406, 407, 88 L.Ed.2d 357 (1985).

Sollars' statements regarding Marzullo also furthered the conspiracy. Even though White had agreed during an earlier conversation to provide Sollars with an alibi, Sollars felt a need to go over the alibi again and make sure White "ha[d] the story straight." Identifying the co-conspirators' roles in setting the fire and discussing the payment Sollars would receive would solidify White's involvement and further impress him with Sollars' need for an alibi. *See Lewis,* 759 F.2d at 1349; *Handy,* 668 F.2d at 408.

■ 3. *George Wright's non-conspirator testimony.* Wright testified Sollars told him on two occasions that Sollars had set the fire. On one of those occasions, Sollars also stated Marzullo was going to pay him for setting the fire. Viewed in

context, these statements appear to be casual comments, merely informing Wright of Sollars' activities. The statements did not advance any objectives of the conspiracy, and therefore were not made in furtherance of the conspiracy. *See United States v. Snider,* 720 F.2d 985, 992 (8th Cir.1983), *cert. denied,* 465 U.S. 1107, 104 S.Ct. 1613, 80 L.Ed.2d 142 (1984). We do not decide whether these statements would have been inadmissible hearsay if Marzullo had been tried separately.

We find that Wright's statements did not prejudice Marzullo's right to a fair trial. The same evidence concerning payment by Marzullo properly would have been introduced and corroborated through White and Akines even if Marzullo had been tried separately. Therefore, Wright's testimony was merely cumulative, did not cause clear prejudice, and would have been harmless error.

### B. Sollars

Sollars raises several claims of error. First, he claims the district court erred by allowing the government to question witness Michael Schlatman on cross-examination beyond the scope of direct. "The permissible extent of cross-examination is a matter within the broad discretion of the district court." *United States v. Schepp,* 746 F.2d 406, 410 (8th Cir.1984), *cert. denied,* 469 U.S. 1215, 105 S.Ct. 1190, 84 L.Ed.2d 336 (1985); *see* Fed.R.Evid. 611(b).

On direct examination, Sollars asked Schlatman about interviews he had conducted for Travelers Insurance Company when he investigated the fire. By doing so, Sollars opened the door to questions on cross-examination about any statements Sollars had made when Schlatman interviewed him. Sollars also implied when questioning Schlatman that others could have started the fire. The statements the government elicited on cross-examination corroborated other testimony that Sollars had attempted to procure a false alibi for the night of the fire, negating the inference that anyone else had started the fire.

In addition, the government could have elicited the incriminating testimony from Schlatman in its case in chief. The government could have called Schlatman to corroborate White's testimony, whose credibility had been impeached earlier. Finally, defendant's counsel had ample opportunity to examine Schlatman and rebut or impeach his testimony. *See United States v. Alvarez,* 833 F.2d 724, 729 (7th Cir.1987). The trial court did not abuse its discretion by allowing the government to cross-examine Schlatman about Sollars' statements.

Sollars also claims the district court erred by permitting the government to play a tape recording in which witness Joleena Wade, Sollars' stepdaughter, told an agent of the Bureau of Alcohol, Tobacco, and Firearms (BATF) that she saw Sollars on the roof of the Milk Barn the night of the fire. Under Fed.R.Evid. 803(5), a recorded recollection is admissible hearsay if the witness once had knowledge, but no longer has sufficient recollection to testify and the matter was recorded when fresh in the witness' memory. Wade testified at trial that she remembered talking to the BATF agent, but she could not remember whether she told him Sollars was on the roof. She made the recorded statement only two months after the fire, when her memory was still fresh. The evidence was properly admitted under Fed.R.Evid. 803(5). *See United States v. Riley,* 657 F.2d 1377, 1386 (8th Cir.1981). Additionally, the tape would have been admissible under Fed.R.Evid. 607 and 613 to impeach Wade's credibility. Under these rules, a party is allowed to impeach its own witness and may use a prior inconsistent statement to do so. The trial court did not err in allowing the government to play the tape recording.

Sollars also claims: (1) the district court erred by not suppressing a statement made by Sollars to a private investigator when Sollars had not been informed of his right to remain silent or to an attorney; (2) the district court erred by not granting the defendants separate trials; (3) the district court erred by not granting Sollars' motion for a judgment of acquittal; and (4) the district court erred in enhancing his sen-

tence for obstruction of justice. We have reviewed these claims of error and find them without merit.

## III. CONCLUSION

We find no abuse of discretion and no error in the trial court's rulings. Therefore, we affirm.