**James E. WILLIAMS, Appellant–Defendant,**

v.

**STATE of Indiana, Appellee–Plaintiff.**

**No. 48A02–9707–CR–463.**

Court of Appeals of Indiana.

Aug. 31, 1998.

Rehearing Denied Sept. 24, 1998.

Donald H. Hurst, Anderson, for Appellant–Defendant.

Jeffrey A. Modisett, Attorney General, Rosemary L. Borek, Deputy Attorney General, Indianapolis, for Appellee–Plaintiff.

## OPINION

BAKER, Judge.

Appellant-defendant James E. Williams appeals his conviction for Burglary,[1] a Class B felony. Specifically, he contends that the court violated his right of confrontation by admitting a videotape into evidence.

### FACTS

On August 12, 1995, someone entered Patricia Morrow's house and took two guns from her bedroom. A few days later, Williams' seven-year-old son, Wenzel, told his mother, Darlene Williams, that Williams and he had gone to Morrow's house and Williams had taken the guns. Darlene then took Wenzel to the police station where they met with Detective Tom Hay of the Anderson Police Department. During a videotaped conversation with Detective Hay, Wenzel stated that a few days earlier he and Williams rode a bike to Morrow's house, that Williams opened a screen window, lifted Wenzel through the window and told him to open the door. Wenzel also stated that after he opened the door, Williams entered the house, went into Morrow's bedroom and took two guns from under the mattress. Wenzel also told Detective Hay that the two then left the house and Williams warned him not to tell his mother about what they had done.

On September 1, 1995, Williams was charged with burglary. During the jury trial, held in November of 1995, Wenzel testified that he went to Morrow's home with his father in August of 1995, and knocked on the door, but nobody was home. Record at 101.

---

1. IND.CODE § 35–43–2–1.

He also stated that when Morrow arrived home, he and his father left. R. at 101. Wenzel denied entering Morrow's house and testified that, while he and his father were there, he noticed that a window was "busted open." R. at 101. Wenzel also testified that he remembered making the videotaped interview, but when asked if he recalled making the statements incriminating his father in the burglary, he alternated between not recalling the statements and denying them. R. at 101. The State was then permitted to introduce into evidence the videotaped interview of Wenzel over Williams' objection. R. at 101. At the conclusion of the evidence, Williams was convicted of burglary.

Thereafter, Williams appealed his burglary conviction, contending that the trial court erred by admitting the videotaped interview of Wenzel, which he claimed was hearsay. The State failed to file a brief disputing Williams' contention. In December of 1996, in an unpublished opinion, this court determined that Williams demonstrated prima facie error by showing that the videotape was not admissible as a prior inconsistent statement under Ind. Evidence Rule 801(d)(1)(A). Therefore, we reversed his burglary conviction and remanded the case for a new trial. *See Williams v. State*, No. 48A05–9603–CR–120, 674 N.E.2d 1054 (Ind.Ct.App., Dec.30, 1996).[2]

During Williams' second jury trial on May 20, 1997, Wenzel was shown his prior video-taped statement out of the presence of the jury to refresh his memory. Nevertheless, during his trial testimony, Wenzel testified that although he remembered talking to the detective in August of 1995, he did not remember what he said to him, "being in that video tape" or talking to the detective in the video tape. R. at 245–48. Wenzel also testified that he did not remember whether he was with his father on August 12, 1995. R. at 245–46. On cross-examination, Williams' counsel asked Wenzel whether he knew the difference between telling the truth and telling a lie to which Wenzel responded that he did. R. at 249. Williams' counsel then asked Wenzel again whether he remembered "back in August of 1995" to which Wenzel again responded that he did not. The State then offered Wenzel's videotaped statement under the recorded recollection hearsay exception. Despite Williams' objection that the admission of the tape violated his Sixth Amendment right of confrontation, the trial court admitted Wenzel's videotaped interview into evidence. At the conclusion of the evidence, Williams was again convicted of burglary. Williams now appeals.

## DISCUSSION AND DECISION

Williams' sole contention on appeal is that the trial court erred by admitting the videotaped interview of Wenzel. Although Williams concedes that the videotaped interview was admissible under the recorded recollection exception[3] to the hearsay rule,[4] he

---

2. Although Williams failed to provide a transcript of his first trial, we were able to ascertain the contents of Wenzel's testimony from the *FACTS* contained in this court's prior unpublished opinion. *See Williams v. State*, 48A02–9603–CR–120, 674 N.E.2d 1054, slip op. at 3 (Ind.Ct.App., Dec. 30, 1996).

3. The Recorded Recollection exception to the hearsay rule provides as follows:

 (5) Recorded Recollection. A memorandum or record concerning a matter about which a witness once had knowledge but now has insufficient recollection to enable the witness to testify fully and accurately, shown to have been made or adopted by the witness when the matter was fresh in the witness's memory and to reflect that knowledge correctly. If admitted, the memorandum or record may be read into evidence but may not itself be received as an exhibit unless offered by an adverse party.

4. Because Williams concedes that Wenzel's videotaped statement was admissible under the recorded recollection exception, we will proceed with our analysis without deciding that issue on appeal. However, we do note that before a statement can be admitted under the recorded recollection hearsay exception, certain foundational requirements must be met, including some acknowledgment that the statement was accurate when it was made. *See* 13 MILLER, INDIANA PRACTICE § 803.105 (1995). Although our research reveals no case which specifically addresses the extent to which this requirement must be satisfied when the State is confronted with a hostile witness, other courts have indicated a willingness to relax the requirement, especially when the witness' oral statement is recorded verbatim by another party and the witness does not repudiate that statement. *Id; See United States v. Sollars*, 979 F.2d 1294, 1298 (8th Cir.1992) (witness' statement was admissible under recorded recollection hearsay exception after

contends that, by admitting the videotape into evidence, the court violated his right of confrontation under the Sixth Amendment to the U.S. Constitution and Article I, Section 13 of the Indiana Constitution.

## I. Federal Constitution

 Williams first contends that the admission of the videotape violated his right of confrontation under the Sixth Amendment to the U.S. Constitution. Although hearsay rules and the Confrontation Clause are generally designed to protect similar values, the Confrontation Clause bars the admission of some evidence that would otherwise be admissible under an exception to the hearsay rule. *Idaho v. Wright,* 497 U.S. 805, 814, 110 S.Ct. 3139, 111 L.Ed.2d 638 (1990). In order for incriminating statements admissible under an exception to the hearsay rule to comply with the Confrontation Clause, the State must show that the declarant is unavailable and that the statement bears adequate "indicia of reliability." *State v. Owings,* 622 N.E.2d 948, 952 (Ind.1993). Reliability. can be inferred without more in a case where the evidence falls within a firmly rooted exception to the hearsay rule. *Arndt v. State,* 642 N.E.2d 224, 228 (Ind.1994), *citing Idaho,* 497 U.S. at 815, 110 S.Ct. 3139.

 Initially, we note that Williams concedes that Wenzel's lack of recollection made him unavailable. In addition, although Indiana did not formerly adopt the Indiana Rules of Evidence until 1994, Indiana court's have long recognized the recorded recollec-

tion exception to the hearsay rule. *See, e.g. Gee v. State,* 271 Ind. 28, 36, 389 N.E.2d 303, 309 (1979) (recognizing recorded past recollection as exception to hearsay rule); *see also Grimes v. State,* 258 Ind. 257, 258, 280 N.E.2d 575, 577 (1972) (same). We also note that the tenth circuit has held that the use of a recorded recollection is a firmly rooted exception to the hearsay rule. *Hatch v. State of Oklahoma,* 58 F.3d 1447 (10th Cir. 1995), *cert. denied,* 517 U.S. 1235, 116 S.Ct. 1881, 135 L.Ed.2d 176; *see also J.C. Penney Co. v. N.L.R.B.,* 384 F.2d 479, 484 (10th Cir.1967) (use of recorded past recollection has become firm practice as one of many exceptions to hearsay rule). Therefore, we conclude that the recorded recollection is a firmly rooted exception to the hearsay rule and, as such, the use of the videotaped interview as a recorded recollection did not violate Williams' Sixth Amendment right of confrontation under the U.S. Constitution.

## II. Indiana Constitution

 Williams next contends that the admission of the videotaped interview violated his right of confrontation under Article I, Section 13,[5] of the Indiana Constitution, which gives a defendant the right to "meet the witnesses face to face." Initially, we note that Williams' objections at trial did not assert any claim of violation of the Indiana Constitution. Therefore, he has waived this issue on appeal. *See Hart v. State,* 578 N.E.2d 336, 338 (Ind.1991) (failure to object

she testified that she remembered talking to a BATF agent but that she could not remember what she told him), *cert. denied,* 507 U.S. 1037, 113 S.Ct. 1864, 123 L.Ed.2d 484 (1993); *United States v. Riley,* 657 F.2d 1377, 1385–86 (8th Cir.1981) (witness' prior taped and written statements were admissible under recorded recollection hearsay exception after witness testified that she had no clear present memory or knowledge of events in question, even after listening to the tape and reviewing written statement); *United States v. Lewis,* 954 F.2d 1386, 1395 (7th Cir. 1992) (inmate's statement contained in agent's report was admissible as recorded recollection where inmate testified that he did not remember telling agent anything and that the events in question were fresher in his memory when the report was made and agent testified that he accurately transcribed the notes when he prepared the report). Here, the record reveals that during

trial Wenzel testified that he remembered talking to the detective in August of 1995. Further, his statement was captured on videotape and was not a characterization of Wenzel's statement by the detective. We believe these factors would be sufficient to establish the reliability and accuracy of the statement under the recorded recollection hearsay exception.

5. This section provides that [i]n all criminal prosecutions, the accused shall have the right to a public trial, by an impartial jury, in the county in which the offense shall have been committed; to be heard by himself and counsel; to demand the nature and cause of the accusation against him, and to have a copy thereof; to meet the witnesses face to face, and to have compulsory process for obtaining witnesses in his favor.

on Indiana Constitutional grounds at trial results in waiver on appeal).

■ Waiver notwithstanding, Williams' argument fails. Indiana's Confrontation Clause differs from its federal counterpart in that it contemplates a face to face meeting in which the accused and the witness can see and recognize one another. *Brady v. State*, 575 N.E.2d 981, 987–88 (Ind.1991). Although the accused must have an opportunity to cross-examine the witness during the face to face confrontation, the opportunity does not have to be seized or successful and the right can be waived. *Pierce v. State*, 677 N.E.2d 39, 50 (Ind.1997).

■ Here, the record reveals that Wenzel testified during the second trial. Therefore, Williams had the opportunity to meet Wenzel face-to-face and to cross-examine him. In fact, the record reveals that Williams did perform a brief cross-examination of Wenzel, questioning him regarding the truthfulness of his present testimony. Thereafter, Williams could have attempted to question Wenzel about the truthfulness of his prior statement. Although we acknowledge that Wenzel stated that he was unable to remember what he had previously said, Williams still had the opportunity to attempt to impeach Wenzel and to allow the jury to judge Wenzel's demeanor and credibility in answering his questions.[6] Thus, even though Wenzel was unavailable due to a lack of memory, Williams was provided an opportunity to meet Wenzel face-to-face and to cross-examine him regarding the prior statement. Thus, we cannot conclude that he was denied his right of confrontation under the Indiana Constitution. *See id.* (defendant cannot claim loss of right to meet witnesses "face to

face" if face to face meeting took place and defendant failed to question witness).[7]

Judgment affirmed.

KIRSCH, J., concurs.

SULLIVAN, J., dissents with opinion.

SULLIVAN, Judge, dissenting.

Indiana recognizes that a criminal defendant has a constitutional right not only to meet the witnesses against him face to face (confrontation) but also to cross-examine those witnesses. *State v. Owings* (1993) Ind., 622 N.E.2d 948; *Brady v. State* (1991) Ind., 575 N.E.2d 981. The latter right assures a defendant that he will have the opportunity to "fully and effectively" challenge the testimonial evidence presented against him. *Owings*, 622 N.E.2d at 951; *Brady*, 575 N.E.2d at 988. Presumably, it is the view of the majority that a defendant need not have an opportunity to effectively cross-examine with reference to the crucial and damaging substance of the "past recollection recorded"; it is enough that the declarant is physically present in the court room and competent to take an oath. I respectfully disagree.

The majority begins its analysis with the assumption that Wenzel's statement is, in fact, admissible under the past recollection recorded hearsay exception. It is necessary to make this assumption because the Confrontation Clause analysis under *Idaho v. Wright* (1990) 497 U.S. 805, 110 S.Ct. 3139, 111 L.Ed.2d 638 applies only if it initially has been determined that a statement falls within a valid hearsay exception. *See Idaho v. Wright*, 497 U.S. at 814, 110 S.Ct. 3139 ("In *Ohio v. Roberts*, we set forth 'a general approach' for determining when incriminating statements admissible under an exception to the hearsay rule also meet the requirements

---

6. We note, however, that in order to effectively cross-examine Wenzel regarding the truthfulness of his prior statement, Williams would first have set forth the content of the prior statement. Thus, counsel may have chosen not to attempt to impeach Wenzel so that the incriminating nature of the statement would not be emphasized.

7. We also note that, although *Traver v. State*, 568 N.E.2d 1009 (Ind.1991) sets forth a different test for determining whether a witness's out of court statements violate the Confrontation Clause, this

test was premised upon the supreme court's prior decision in *Patterson v. State*, 263 Ind. 55, 324 N.E.2d 482 (1975), which was explicitly overruled by *Modesitt v. State*, 578 N.E.2d 649 (Ind. 1991), which was handed down in September of 1991. Therefore, to the extent that *Traver*, which was handed down in March of 1991, conflicts with the supreme court's more recent decisions, we conclude that it too was overruled by *Modesitt*.

of the Confrontation Clause."). Unlike the majority, I cannot assume that the State met the foundational requirements for admitting a statement under Evid. R. 803(5).[8] According to the rule, a record must, among others things, concern a matter about which a witness once had knowledge and must reflect the knowledge of the witness correctly. As adopted in American jurisprudence, the rule permitting past recollection recorded as an exception to the hearsay exclusion rule and as substantive evidence, required the witness "to affirm that 'he knew it to be true at the time' [the statement] was made." Notes And Legislation, Past Recollection Recorded, 28 *Iowa L.Rev.* 530 at 534–535 (1943); 31 Michael H. Graham, *Federal Practice and Procedure*, § 6756 at 323 (1997). Consequently, the view which I express would preclude admission of many statements proffered as past recollection recorded unless the witness at trial indicates some minimal recollection of the past incident, or a recollection of the facts at the time the statement was made and recorded. During the second trial, Wenzel testified that he had no recollection of the incident and did not recall making the videotape statement; he remembered only talking to the detective.[9]

However, there is precedent that the record may be admitted if the "conduct surrounding the making of the event [sic] reveals that the memorandum must have been a true account of what was perceived ..." 28 *Iowa L.Rev.*, supra, at 535. This concept imports trustworthiness and accuracy from the making of the statement itself. The cases and the commentators seem to conclude that a guarantee of trustworthiness comes from the reliability inherent in a record made while events were fresh in the mind and which accurately reflects those events. The rub lies, however, in the fact that this presupposes that the declarant admits making the statement at the time but *now* is unable to recollect what he said or knew at the time. It also presupposes that the record is an *accurate* reflection of what the declarant actually knew at the time. Finally, it presupposes that the circumstantial trustworthiness is an adequate substitute for cross-examination. An ambiguity exists in this reasoning in that it ignores the dangers of "defective memory or perception or narration" which can only be adequately tested by cross-examination. *See* 30 Charles A. Wright and Kenneth W. Graham Jr., *Federal Practice and Procedure* § 6333 at 85 (1997). Cross-examination may, in many instances, cast doubt upon the veracity or accuracy of a statement having superficial or circumstantial trustworthiness. If the opponent cannot effectively cross-examine the declarant as to the statement, neither the accuracy of the statement at the time the record was made nor the knowledge of the declarant at the crucial time of the events in question can be tested. Therefore, I am unable to square the increasing frequency with which recorded past recollections are admitted in questionable circumstances with the corollary result that, notwithstanding serious questions as to the accuracy and trustworthiness of the recorded statement, that statement receives the imprimatur of absolute truth in that it is not susceptible to challenge or contravention.

I also recognize that my view may appear to undercut the implementation of the rule as a "rule of necessity" and to cast some question as to whether the evidence is admitted pursuant to the rule under the mistaken and self-serving premise that it is reliable and trustworthy merely because it has become

---

8. I believe it is interesting to note that in the first trial, the State offered Wenzel's statement under Evid. R. 801(d)(1)(A) as a prior inconsistent statement, but made no such argument upon appeal. We reversed that initial conviction because the statement did not comply with the requirements of the Rule, i.e., it was not given under oath. Given a second bite of the apple, the State changed its strategy and offered the statement under Evid. R. 803(5).

9. In my view, and as simply expressed in *United States v. Collicott* (1996) 9th Cir., 92 F.3d 973, 984, unless the declarant adopts the statement as her own recorded recollection or vouches for its accuracy, such statement does not satisfy the foundational requirements of Evid. R. 803(5). In my further view, the physical evidence of Wenzel's presence and voice at the recordation of the statement does not carry with it the requisite demonstration that he did in fact have knowledge of events which his statement alluded to or that the substantive content of his recorded "recollection" was an accurate reflection of his actual recollection of the events.

firmly rooted as a rule of "necessity." [10] It would seem apparent that for the rule to have validity, the evidence must bear the attributes of reliability and trustworthiness without regard to how essential the State considers that evidence to be to its burden to prove the disputed fact beyond a reasonable doubt. I retain this belief notwithstanding a suggestion in *Idaho v. Wright* (1990) 497 U.S. 805 at 816, 110 S.Ct. 3139, 111 L.Ed.2d 638, drawing from *Ohio v. Roberts* (1980) 448 U.S. 56 at 66, 100 S.Ct. 2531, 65 L.Ed.2d 597, that the prior statement must fall within a firmly rooted hearsay exception "or" have particular guarantees of trustworthiness. (Emphasis supplied). My reading of *Roberts* does not indicate that the "firmly rooted" factor is an alternative to the trustworthiness requirement. To the contrary, *Roberts* clearly reflects the principle that once the witness is found to be unavailable, i.e., that the necessity exists, the statement must also be determined to be reliable and trustworthy. In somewhat diluting language, however, the Court in *Roberts* concluded that the requisite reliability and trustworthiness may in some instances be "inferred ... where the evi-

dence falls within a firmly rooted hearsay exception." 448 U.S. at 66, 100 S.Ct. 2531. The same concept was enunciated in *Bourjaily v. United States* (1987) 483 U.S. 171, 181–84, 107 S.Ct. 2775, 97 L.Ed.2d 144, which, although treating Federal Rule 801(d)(2)(E) as to a co-conspirator's statement, utilized a rationale that, because hearsay rules and the Confrontation Clause are designed to protect similar values, if an exception to the hearsay rule has been established for certain evidence, there are no confrontation or cross-examination impediments to admissibility and we need not be concerned with the reliability or the trustworthiness of the statement. I submit that that resolution is too facile to be blindly accepted. [11]

Nevertheless, in *Arndt v. State* (1994) Ind., 642 N.E.2d 224, 227, our Supreme Court held that "exceptions to the hearsay rule exist, because the manner in which certain out-of court statements are made virtually guarantee their reliability." In other words, reliability and trustworthiness are the prerequisite for an exception becoming firmly rooted. The latter status may not be found to exist

10. The requisite "necessity" was perceived by the Unites States Supreme Court to exist when the declarant is "unavailable" for testimony at trial. *Ohio v. Roberts* (1980) 448 U.S. 56, 100 S.Ct. 2531, 65 L.Ed.2d 597. However, subsequently that Court may have relaxed the "unavailability" requirement in *White v. Illinois* (1992) 502 U.S. 346, 112 S.Ct. 736, 116 L.Ed.2d 848, where the Court found that the declarant need not be declared unavailable before the out-of-court statement is admitted, if the statement is reliable and cannot be recaptured by later in-court testimony. In Indiana, the requisite degree of "necessity" is deemed to be present not only for total physical unavailability, or when the witness's memory is totally lacking, but also when the memory is insufficient to allow the witness to testify "fully and accurately." *Court Rules Annotated*, Evid. R. 803(5), Committee Commentary, Part Six, (D) (Burns Code Ed.1998). In this respect, it may be noted that under the Indiana Rule, availability or non-availability of the declarant as a trial witness is not material to the admissibility of his prior statement. It is important to our analysis, therefore, to recognize that the Committee expressly stated that the past recollection recorded exception to the hearsay rule "be cautiously applied in criminal cases," in Indiana, precisely because the right of confrontation and cross-examination are implicated and might be infringed. *Id.*

11. It may be noted that Indiana case law has emphasized the availability for cross-examination with regard to Evid. R. 801(d)(1) admissibility. The two principal decisions, however, do not appear to be harmonious. In *Watkins v. State* (1983) Ind., 446 N.E.2d 949, the Court held a prior statement inadmissible, in part, because the declarant did not remember making it and was therefore not available for cross-examination. In *Brown v. State* (1996) Ind., 671 N.E.2d 401, however, the court refused to follow the *Watkins* rationale but, in order to do so, appeared to draw a "very thin" factual distinction. *See* William F. Harvey, *Rules & Rulings*, Res Gestae, November 1997, at 43. The distinction was that while in *Watkins* the declarant did not remember making the statement, in *Brown* the declarant did not remember exactly what was said. One might speculate that *Watkins* was based upon the since discredited decision in *Patterson v. State* (1975) 263 Ind. 55, 324 N.E.2d 482 and, therefore, is not worthy of consideration as precedent. The *Brown* decision, however, was not based upon this reasoning. It rested upon a perceived difference in the degree of recollection concerning the making and the content of the prior statement. Be that as it may, one may reasonably conclude that availability for meaningful cross-examination, or the fact of thorough cross-examination or its availability at the time of the earlier statement, is or should be crucial to the admissibility determination.

without the presence of the foundational requirement of reliability and trustworthiness. In this sense, then, I would not allow the rule of "necessity" to become a rule of "convenience" when the effect is to abrogate the safeguards of cross-examination. *See* 30 Wright and Graham, *supra* § 6332 at 83.[12]

More to the precise point, perhaps, is *State v. Owings* (1993) Ind., 622 N.E.2d 948, 951 (citing *Mattox v. United States* (1895) 156 U.S. 237, 15 S.Ct. 337, 39 L.Ed. 409) which recognized that the right of confrontation and cross-examination must "occasionally give way to considerations of public policy and the necessities of the case." The Court, however, very clearly and explicitly noted that prior testimony from a subsequently unavailable witness is admissible only if the defendant had the opportunity to confront the witness when the testimony was originally given. *Id.* Some of the cases cited in *Owings* are remarkably similar to the situation before us, i.e., *Brady v. State* (1991) Ind., 575 N.E.2d 981 (videotaped deposition testimony taken outside the presence of defendant and used at trial); *Miller v. State* (1987) Ind., 517 N.E.2d 64 (videotaped statement of child where defendant received no notice).

Quite clearly, here, defendant did not and could not have cross-examined Wenzel at the time the detective took and recorded the statement. Furthermore, the fact that Wenzel testified at the first trial does not satisfy the opportunity for meaningful cross-examination because at that time Wenzel alternated between denying making any statements incriminating his father and not recalling making such statements. *Williams v. State* No. 48A05–9603–CR–120, 674 N.E.2d 1054, slip op. at 3 (December 30, 1996). Obviously, under the circumstances there was no opportunity to cross examine with regard to the substance of the videotaped questioning by the detective. The situation is akin to that presented under Evid. R. 801 and as discussed in *Watkins v. State, supra,* note 11.

In the case before us, the majority determines that Wenzel's videotaped statement is reliable and trustworthy because the statement was obviously made by him at a time when the facts would have been fresh in his memory. Such conclusion does not carry the day, however. It has not been demonstrated, except by a bootstrapping analysis, that Wenzel did in fact have knowledge at the time in question of the matters which were the subject of the statement. The majority rationale would impart the existence of past knowledge to any statement made with regard to real, imagined, or falsified events. The mere making of a statement does not reflect that the declarant did indeed once have knowledge that the facts as stated did occur. Furthermore, there is no showing that, even if Wenzel did have knowledge of events on August 12, 1995, (the date of the burglary) or ten days thereafter (the date of the statement), his recorded statement reflected his knowledge accurately. The State has not otherwise provided those missing elements other than by offering into evidence the statement itself.

I would reverse the conviction and remand for further proceedings.

---

**12.** One might legitimately question the trustworthiness and reliability of the incriminating statements made by Wenzel in that the burglary victim and the defendant did not get along, that Wenzel was brought to the police station ten days after the occurrence by his mother, the victim's cousin, and that Wenzel was afraid that defendant might hurt his mother. There was no evidence to demonstrate that Wenzel was in fact coached in making his statement or that he was merely trying to please his mother and satisfy the detective by giving answers along the lines suggested by the questions. However, these factors indicate that the totality of the circumstances test for guaranteeing trustworthiness, as discussed in *Idaho v. Wright,* supra, have not been met and dramatize the danger inherent in admitting such statements without the substance of the statement being subject to cross-examination.