## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



ATTORNEY FOR APPELLANT

Peter L. Boyles
Rhame & Elwood
Portage, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Ian McLean
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Dontaye Singletary,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff*

December 31, 2015

Court of Appeals Case No.
64A03-1503-CR-109

Appeal from the Porter Superior Court

The Honorable Roger V. Bradford

Trial Court Cause No.
64D01-1211-MR-11491

**Mathias, Judge.**

[1] Dontaye Singletary ("Singletary") was convicted in Porter Superior Court of murder and was ordered to serve sixty-five years in the Department of Correction. He appeals his conviction and sentence and raises four issues:

I.   Whether the trial court abused its discretion when it admitted into evidence Antoinetta Johnson's statement given to police before she was murdered;

II.  Whether the trial court abused its discretion when it admitted testimony concerning a shooting that occurred on Kentucky Street in Gary, Indiana.

III. Whether the State presented sufficient evidence to prove that Singletary committed murder; and,

IV.  Whether Singletary's sixty-five year sentence is inappropriate in light of the nature of the offense and the character of the offender.

[2] Concluding that Singletary has not established any reversible error, we affirm his conviction and sentence.

## Facts and Procedural History

[3] The victim, Carl Griffith ("Griffith"), was employed at a towing company in Gary, Indiana, owned by Ronnie Major, Sr. Major's estranged wife, Sheaurice Major, was upset with Griffith and decided to have him killed.[1] Sheaurice initially asked Antoine Gates ("Gates") to kill Griffith, but Gates was taken into police custody before he was able to do so.

[4] Gates' girlfriend, Antoinetta Johnson, knew that Singletary might be willing to kill Griffith for payment. Singletary agreed, and on November 1, 2012, Singletary's friend, Emeeshia Mapps, at his request, made multiple phone calls to Major's towing company and requested a tow for a silver Lexus located on Kentucky Street in Gary. Emeeshia had ridden in a black sedan with Antoinetta

---

[1] Sheaurice was apparently upset with Griffith because during a period of time when Major was incarcerated, Griffith ran the towing company and gave profits from the business to Major's girlfriend and son.

and Singletary earlier that morning. After Emeeshia requested a tow for the silver Lexus, Antoinetta dropped Singletary off near the Kentucky Street address.

Griffith and another employee proceeded to the Kentucky Street address to tow the Lexus. They arrived at the address at approximately 12:15 p.m. Because the owner of the Lexus was not present, Griffith and his co-worker waited in the tow truck. Singletary then approached the driver's side of the truck and attempted to shoot Griffith, but he missed. Griffith quickly drove away and contacted the police. Neither Griffith or his co-worker were able to identify the shooter.

Griffith returned to his home that day in Portage, Indiana, at approximately 7:55 p.m. His son heard Griffith open the door and go outside, likely to get the newspaper. Griffith's son then heard three or four gunshots. When he ran outside, he saw Griffith lying in the front yard and he called 911. When the police arrived, Griffith was not breathing and did not have a pulse. Griffith died as a result of multiple gun shot wounds.

Griffith's neighbors also heard the gunshots and looked outside to see what had happened. Multiple neighbors observed a man running through the neighborhood. The man was seen getting into the passenger side of a black sedan, which had been parked in the neighborhood for approximately two hours. The vehicle was a Chrysler 200 with Illinois license plates, which was rented to Antoinetta Johnson. Antoinetta was driving the vehicle and drove

Singletary back to his home in Gary. During the drive, Singletary stated to Antoinetta, "I got him." Tr. p. 408; Ex. Vol., Ex. 64.

[8] Portage Police Detective Janice Regnier questioned Sheaurice Major after Griffith's death because Sheaurice had threatened Griffith prior to the shooting. The detective obtained Antoinetta's name from Sheaurice during her investigation. Antoinetta's cell phone number also appeared on Singletary's and Sheaurice's cell phone records.

[9] Detective Regnier attempted to contact Antoinetta but was only able to speak to her husband. Antoinetta's husband told the detective that Antoinetta's silver Lexus had been involved in an accident, and therefore, she had rented a black, newer model vehicle with Illinois license plates. Detective Regnier confirmed that Antoinetta had rented a black Chrysler 200 during the week of the shooting.

[10] On November 7, 2012, the police located Antoinetta. She denied any involvement in the shooting but later agreed to give a statement to police in exchange for immunity. Antoinetta confessed that Sheaurice agreed to pay for Griffith's murder, and she drove Singletary to an intersection near Griffith's residence and waited for him while Singletary lay in wait for Griffith to return home. After the shooting, Antoinetta returned Singletary to his mother's home in Gary.

[11] Shortly thereafter, Singletary was charged with murdering Griffith and conspiracy to commit murder. Sheaurice was also charged with murder and conspiracy to commit murder.

[12] After his arrest, Singletary was incarcerated at the Porter County Jail. Singletary admitted to two cellmates that he shot Griffith. Singletary discussed his pending criminal case with one of those cellmates, John Tener. Specifically, he asked Tener for advice concerning his cell phone records and expressed concern about Antoinetta's statements to the police. Tener advised Singletary that the State would not have much of a case if Antoinetta "wasn't around." Tr. p. 354. Singletary also admitted to Tener that he shot Griffith with an AK-47. Tr. pp. 354-55.

[13] In December 2012, Singletary was watching the news in the television room at the jail. Singletary drew Tener's attention and wanted him to watch a report that Antoinetta Johnson had been murdered at her beauty salon on December 13, 2012. After Tener, Singletary, and a third inmate returned to their cell, Singletary "fist bumped" the other inmate, and Singletary smiled. The next day, Tener asked Singletary, "How did that happen?" Tr. p. 357. Singletary was sitting at a desk and replied to the question by dropping a pencil on a sheet of paper and gesturing toward the paper. Tener believed that Singletary was telling him that he arranged Antoinetta's death by letter.

[14] Singletary's four-day jury trial began on January 21, 2015. During trial, Singletary objected to evidence concerning the attempt to shoot Griffith on

Kentucky Street in Gary, to the admission of Antoinetta's statement to the police, and to Tener's testimony implicating Singletary in Antoinetta's death. The trial court overruled the objections. The jury found Singletary guilty of both murder and conspiracy to commit murder.

At sentencing, the trial court merged the conspiracy count with the murder count, and entered a judgment of conviction on the murder charge. The trial court considered the following aggravating circumstances: Singletary's juvenile delinquency adjudications, that Griffith was more than sixty-five-years old, that Singletary was on pre-trial diversion when he murdered Griffith, that he "was lying in wait," and that he was hired to murder Griffith. Appellant's App. p. 147. The trial court considered the effect of Singletary's absence on his children as the only mitigating circumstance. After concluding that the aggravating circumstances far outweighed the mitigating circumstances, the trial court ordered Singletary to serve sixty-five years in the Department of Correction. Singletary now appeals.

## Admission of Antoinetta's Statement to the Police

Singletary argues that admitting Antoinetta Johnson's recorded statement to the police violated his right to confrontation established by the Sixth Amendment of the United States Constitution and Article 1, Section 13 of the Indiana Constitution. In response, the State argues that Antoinetta's statements were admissible because Singletary forfeited his right to object by wrongfully causing Antoinetta's unavailability for trial.

[17]  Generally, rulings on the admission of evidence are reviewed for abuse of discretion. *McHenry v. State*, 820 N.E.2d 124, 128 (Ind. 2005). An abuse of discretion occurs if the trial court's decision is "clearly against the logic and effect of the facts and circumstances before the court, or if the court has misinterpreted the law." *Boatner v. State*, 934 N.E.2d 184, 186 (Ind. Ct. App. 2010).

[18]  "The Confrontation Clause of the Sixth Amendment provides: 'In all criminal prosecutions the accused shall enjoy the right . . . to be confronted with the witnesses against him.'" *Davis v. Washington*, 547 U.S. 813, 821 (2006). In *Crawford v. Washington*, 541 U.S. 36, 53-54 (2004), the Supreme Court held that this provision bars "admission of testimonial statements of a witness who did not appear at trial unless he was unavailable to testify, and the defendant had had a prior opportunity for cross-examination." But, *Crawford*

> specifically recognized "forfeiture by wrongdoing" as an exception to the requirement of confrontation as a prerequisite to the admission of testimonial hearsay statements. This doctrine holds that a party who has rendered a witness unavailable for cross-examination through a criminal act, e.g., homicide, may not object to the introduction of hearsay statements by the witness on Confrontation Clause grounds.

*Fowler v. State*, 829 N.E.2d 459, 467 (Ind. 2005) (internal citations omitted). Importantly, in *Giles v. California*, 128 S.Ct 2678, 2684 (2008), the United States Supreme Court concluded that the common-law doctrine of forfeiture by

wrongdoing only applies when the defendant procured the witness's unavailability by conduct "designed to prevent a witness from testifying."

[19] Indiana Evidence Rule 804(b)(5) likewise provides that the "forfeiture by wrongdoing" hearsay exception, permits a "statement offered against a party that has engaged in or encouraged wrongdoing that was intended to, and did, procure the unavailability of the declarant as a witness for the purpose of preventing the declarant from attending or testifying." *White v. State*, 978 N.E.2d 475, 479 (Ind. Ct. App. 2012). Here, the State was required to prove by a preponderance of the evidence that Antoinetta was unavailable to testify at trial because Singletary "engaged in or encouraged wrongdoing that was intended to, and did, procure the unavailability of [Antoinetta] as a witness for the purpose of preventing [Antoinetta] from attending or testifying." *See id*.; Ind. Evid. R. 804(b).

[20] Our review of the record indicates that the State proved by a preponderance of the evidence that Singletary arranged Antoinetta's murder so that she would be unavailable to testify at trial. While Singletary was incarcerated in the Porter County Jail, fellow inmate Tener and Singletary discussed that the State would have a difficult time proving the murder charge without Antoinetta's testimony. Shortly thereafter, she was murdered.

[21] After Singletary learned that Antoinetta had been murdered, he "fist-bumped" with a fellow inmate, and Tener observed that Singletary was happy that Antoinetta was killed. Finally, Tener asked Singletary how he arranged her

murder, and Singletary, who was sitting at a desk, replied to the question by dropping a pencil on a sheet of paper and gesturing toward the paper. After observing that act and Singletary's facial expression, Tener believed that Singletary was telling him that he arranged Antoinetta's death by letter. Singletary later told Tener that Antoinetta had been killed by "the Ghost."[2] Evidentiary Hearing Tr. p. 11. Although this evidence is not sufficient to prove beyond a reasonable doubt that Singletary was involved in Antoinetta's murder, it is sufficient to prove by a preponderance of the evidence that he procured her unavailability to testify by arranging her murder.[3]

[22]    Singletary forfeited his Sixth Amendment right of confrontation[4] and his objection to the admission of Antoinetta's hearsay statements because he engaged in conduct, i.e., arranging her murder, that rendered her unavailable for cross-examination. He did so because he did not want Antoinetta to testify

---

[2] Singletary also argues that this evidence was admitted solely to prove "Singletary's propensity to commit the charged crime," and therefore, "the admission of such testimony[] constituted reversible error." Appellant's Br. at 21-22. However, any error in admitting Tener's testimony concerning the likelihood that Singletary arranged Antoinetta's murder was harmless in light of the substantial evidence proving that Singletary murdered Griffith. See *Hoglund v. State*, 962 N.E.2d 1230, 1238 (Ind. 2012) (The improper admission of evidence is harmless "if the conviction is supported by substantial independent evidence of guilt satisfying the reviewing court there is no substantial likelihood the challenged evidence contributed to the conviction.").

[3] In his brief, Singletary challenges Tener's credibility because Tener gave the police information hoping for a more favorable outcome on his own case. The trial court heard this testimony, weighed the evidence, and concluded that Tener was credible. We will not reweigh this determination on appeal. See *Drane v. State*, 867 N.E.2d 144, 146-47 (Ind. 2007).

[4] We reach the same conclusion with regard to Singletary's right to confrontation under Article 1, Section 13 of the Indiana Constitution. Although our state constitutional provision specifically gives the defendant the right "to meet the witnesses face to face," this right can be waived. See *Williams v. State*, 698 N.E.2d 848, 851 (Ind. Ct. App. 1998); see also Ind. Evid. R. 804(b)(5).

at his trial. For these reasons, we conclude that the trial court properly admitted Antoinetta's statement given to the police before she was murdered.[5]

## The Kentucky Street Shooting

[23] Next, Singletary argues that the trial court abused its discretion when it admitted evidence that he attempted to shoot Griffith on Kentucky Street in Gary just hours before he shot Griffith in front of his home. The State argues that the evidence was intrinsic to the charged crimes, and was therefore admissible.

[24] Indiana Evidence Rule 404(b) provides that "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive[.]" The State may offer evidence of motive "to prove that the act was committed," "the identity of the actor," or "the requisite mental state." *Embry v. State*, 923 N.E.2d 1, 9 (Ind. Ct. App. 2010) (internal quotation marks and citations omitted). As long as the "evidence has some purpose besides [establishing] behavior in conformity with a character trait and the balancing test is favorable, the trial court can elect to admit the evidence." *Whatley v. State*, 908 N.E.2d 276, 281 (Ind. Ct. App. 2009).

---

[5] Singletary also briefly argues that "the videotaped statements of [Antoinetta] Johnson contain inadmissible hearsay within hearsay statements attributed to Sheaurice Major under Ind. Evidence Rule 802 and Ind. Evidence Rule 805." Appellant's Br. at 22. He also cites to Evidence Rules 402, 403, and 404(b) to briefly and generally argue that the statements are not relevant and contain inadmissible character evidence. However, Singletary does not direct our attention to any specific statements within Antoinetta's taped statement. Accordingly, we conclude that he has waived this issue on appeal. See Ind. Appellate Rule 46(A)(8).

[25] "In assessing the admissibility of Rule 404(b) evidence, a trial court must (1) determine that the evidence of other crimes, wrongs, or acts is relevant to a matter at issue other than the defendant's propensity to commit the charged act and (2) balance the probative value of the evidence against its prejudicial effect pursuant to Indiana Evidence Rule 403." *Vermillion v. State*, 978 N.E.2d 459, 463 (Ind. Ct. App. 2012) (citing *Embry*, 923 N.E.2d at 8). Pursuant to Evidence Rule 403, "[a]lthough relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice[.]"

[26] Importantly, Indiana Evidence Rule 404(b) "does not bar . . . evidence of uncharged criminal acts that are 'intrinsic' to the charged offense." *Lee v. State*, 689 N.E.2d 435, 439 (Ind. 1997). As we have observed:

> Other acts are "intrinsic" if they occur at the same time and under the same circumstances as the crimes charged. By contrast, the paradigm of inadmissible evidence under Rule 404(b) is a crime committed on another day in another place, evidence whose only apparent purpose is to prove the defendant is a person who commits crimes. Evidence of happenings near in time and place that complete the story of the crime is admissible even if it tends to establish the commission of other crimes not included among those being prosecuted.

*Wages v. State*, 863 N.E.2d 408, 411 (Ind. Ct. App. 2007) (quotations and citations omitted), *trans. denied*.

[27] Here, evidence that Singletary attempted to shoot Griffith on Kentucky Street on the same day that he shot him multiple times at his residence was intrinsic to the charged offense. Singletary attempted to shoot Griffith just hours before he

shot him at his home. The evidence of the Kentucky Street incident was necessarily admitted to explain to the jury Singletary's motive for shooting Griffith. *See Turner v. State*, 953 N.E.2d 1039, 1057 (Ind. 2011) (explaining that "[e]vidence of a defendant's motive is always relevant in the proof of a crime").

[28] Singletary also raised an alibi defense at trial and argued that some other man shot Griffith. Therefore, the evidence of the shooting on Kentucky Street earlier in the day was important to proving the identification of Singletary as the shooter. Emeeshia Mapps' testimony that she had ridden in a black sedan with Antoinetta and Singletary the morning of the Kentucky Street shooting and that as Singletary requested, she called the towing company to request a tow of the silver Lexus on Kentucky Street, was also intrinsic to proving that Singletary murdered Griffith. In addition, this evidence aided in proving that Singletary conspired with Sheaurice Major to kill Griffith in exchange for payment.

[29] Finally, Singletary argues that the evidence should have been excluded because it prejudiced him. "All evidence that is relevant to a criminal prosecution is inherently prejudicial; thus proper inquiry under Evidence Rule 403 boils down to a balance of the probative value of the proffered evidence against the likely unfair prejudicial impact of that evidence." *Fuentes v. State*, 10 N.E.3d 68, 73 (Ind. Ct. App. 2014), *trans. denied*. The evidence concerning the shooting on Kentucky Street was highly probative and was not offered to prove Singletary's character. The State offered this evidence to establish motive and identity. Therefore, evidence concerning the Kentucky Street shooting was not inadmissible under Evidence Rule 403.

## Sufficient Evidence

[30]     Singletary argues that the State failed to prove that he murdered Griffith. When the sufficiency of evidence is challenged, we neither reweigh the evidence nor judge the credibility of witnesses. *Chappell v. State*, 966 N.E.2d 124, 129 (Ind. Ct. App. 2012) (citing *McHenry v. State*, 820 N.E.2d 124, 126 (Ind. 2005)), *trans. denied*. Rather, we recognize the exclusive province of the trier of fact to weigh any conflicting evidence and we consider only the probative evidence supporting the conviction and the reasonable inferences to be drawn therefrom. *Id*. If substantial evidence of probative value exists from which a reasonable trier of fact could have drawn the conclusion that the defendant was guilty of the crime charged beyond a reasonable doubt, then the verdict will not be disturbed. *Baumgartner v. State*, 891 N.E.2d 1131, 1137 (Ind. Ct. App. 2008).

[31]     The State proved that Sheaurice Major asked Singletary to kill Griffith in exchange for payment. Antoinetta Johnson facilitated the agreement between Major and Singletary and drove Singletary to Griffith's home. Singletary waited for Griffith to return home from work and then shot him multiple times with an AK-47 or similar assault rifle. Singletary then ran to a nearby location where Antoinetta was waiting for him in her rented vehicle. Griffith died as a result of the gunshot wounds. This evidence is sufficient to support Singletary's murder conviction. *See* Ind. Code § 35-42-1-1.

## Inappropriate Sentence

[32]   Finally, Singletary argues that his maximum, sixty-five-year sentence for murder was inappropriate in light of the nature of the offense and the character of the offender.[6] Even if a trial court acted within its statutory discretion in imposing a sentence, Article 7, Sections 4 and 6 of the Indiana Constitution authorize independent appellate review and revision of a sentence imposed by the trial court. *Trainor v. State*, 950 N.E.2d 352, 355–56 (Ind. Ct. App. 2011), *trans. denied* (citing *Anglemyer v. State*, 868 N.E.2d 482, 490 (Ind. 2007)). This authority is implemented through Indiana Appellate Rule 7(B), which provides that the court on appeal "may revise a sentence authorized by statute if, after due consideration of the trial court's decision, the Court finds that the sentence is inappropriate in light of the nature of the offense and the character of the offender."

[33]   Still, we must and should exercise deference to a trial court's sentencing decision, because Rule 7(B) requires us to give 'due consideration' to that decision and because we understand and recognize the unique perspective a trial court brings to its sentencing decisions. *Id.* Although we have the power to review and revise sentences, the principal role of appellate review should be to attempt to level the outliers and identify some guiding principles for trial courts and those charged with improvement of the sentencing statutes, but not to achieve what we perceive to be a "correct" result in each case. *Fernbach v. State*,

---

[6] The sentencing range for murder is forty-five years to sixty-five years. *See* Ind. Code § 35-50-2-3.

954 N.E.2d 1080, 1089 (Ind. Ct. App. 2011), *trans. denied* (citing *Cardwell v. State*, 895 N.E.2d 1219, 1225 (Ind. 2008)).

[34] Under Appellate Rule 7(B), the appropriate question is not whether another sentence is more appropriate; rather, the question is whether the sentence imposed is inappropriate. *Fonner v. State*, 876 N.E.2d 340, 344 (Ind. Ct. App. 2007). It is the defendant's burden on appeal to persuade us that the sentence imposed by the trial court is inappropriate. *Id.* (citing *Childress v. State*, 848 N.E.2d 1073, 1080 (Ind. 2006)).

[35] The nature of the offense supports the sixty-five-year sentence. Singletary agreed to kill seventy-two-year-old Griffith for money. Also, Singletary lay in wait for Griffith at Griffith's residence. Shortly after Griffith returned home from work, Singletary shot him multiple times with an AK-47.

[36] The nature of the offender also supports the sixty-five-year sentence. Singletary, who was twenty years old when he murdered Griffith, had three juvenile delinquency adjudications: two batteries resulting in serious bodily injury and theft. As an adult, Singletary was charged with theft and carrying a handgun without a license but was granted a pre-trial diversion. He was still on pre-trial diversion when he murdered Griffith.

[37] For all of these reasons, we conclude that Singletary's sixty-five-year sentence is not inappropriate in light of the nature of the offense and the character of the offender.

## Conclusion

[38] Singletary failed to establish that the trial court abused its discretion when it admitted into evidence Antoinetta Johnson's statement to the police and testimony concerning Singletary's attempt to shoot Griffith on Kentucky Street just hours before he committed murder. The State presented sufficient evidence to prove that Singletary murdered Griffith and his sixty-five-year sentence is not inappropriate in light of the nature of the offense and the character of the offender.

[39] Affirmed.

Baker, J., and Bailey, J., concur.