# FOR PUBLICATION

ATTORNEY FOR APPELLANT:

**P. JEFFREY SCHLESINGER**
Appellate Division
Office of the Public Defender
Crown Point, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**GEORGE P. SHERMAN**
Deputy Attorney General
Indianapolis, Indiana



FILED

Apr 30 2012, 9:32 am

CLERK
of the supreme court,
court of appeals and
tax court

# IN THE
# COURT OF APPEALS OF INDIANA

DONTEVIUS HUTCHERSON,                )
                                     )
   Appellant-Defendant,          )
                                     )
      vs.               )    No. 45A03-1109-CR-420
                                     )
STATE OF INDIANA,                    )
                                     )
   Appellee-Plaintiff.           )

APPEAL FROM THE LAKE SUPERIOR COURT
The Honorable Thomas P. Stefaniak, Jr., Judge
Cause No. 45G04-1003-MR-4

**April 30, 2012**

**OPINION - FOR PUBLICATION**

**CRONE, Judge**

**Case Summary**

This case addresses the unusual circumstance where, in a criminal trial, the State attempts to use a witness's prior statement to refresh his recollection, but the witness cannot read. Dontevius Hutcherson was charged with multiple counts, including murder, attempted murder, and robbery. When the police took a statement from Victor Lee, he said that he saw Hutcherson shortly after the shootings and that Hutcherson told him that he had shot and robbed two men. However, at trial, Lee claimed that he could not recall any of the information regarding a conversation with Hutcherson. Instead, he claimed that he could only remember that he had given a statement to police. Also, because he could not read, he could only verify that the signatures on each page of the statement were his own. To refresh Lee's recollection, the prosecutor read Lee's statement aloud in front of the jury, and the jury subsequently found Hutcherson guilty as charged.

Hutcherson appeals, claiming that he was denied his constitutional right to confront and cross-examine Lee. The State claims waiver due to insufficient objection, and Hutcherson claims fundamental error. Finding no reversible error, we affirm.

**Facts and Procedural History**

On the night of January 19, 2010, Hutcherson was drinking alcohol and smoking marijuana with several people at the home of Cyrus Barnes in Gary. Later, when they all left the house to go to a nightclub, Hutcherson approached Barnes and a few other men by their vehicle, stated that he had lost his money, and told Barnes that he needed to go back inside. Several of the men waited outside while Barnes opened up the house so that Hutcherson

2

could search for his money. Shortly thereafter, Hutcherson emerged from the house, yelled, "F*** you all n******," and fired multiple gunshots at two of the men, William Johnson and Lloyd Holland. Tr. at 83. As Johnson lay on the ground with bullet wounds to the chest, throat, shoulder, and leg, Hutcherson approached him, took his wallet, and left in his girlfriend's vehicle. The girlfriend, identified only as Michelle, and her friend, Anastasia Tyson, were present at the time of the shooting. Hutcherson later cocked his gun at Tyson and asked her what she had seen, and she twice stated that she had seen nothing. Tyson later overheard Hutcherson talking to his mother on the phone, saying, "I f***** up." *Id*. at 133.

Meanwhile, Johnson was transported to a nearby hospital and was treated for serious injuries that have left him confined to a wheelchair. At the hospital, he told two relatives that Hutcherson had shot him. He also saw Hutcherson shoot Holland, who subsequently died from multiple gunshot wounds.

On March 8, 2010, Gary Police Detective Mark Davis took a statement from Victor Lee, who said that Hutcherson told him that he had shot and robbed two men. On March 10, 2010, the State charged Hutcherson with murder, murder in the perpetration of a robbery, class A felony attempted murder, class A felony robbery, class B felony aggravated battery, and class C felony battery.

Hutcherson's jury trial began on June 27, 2011. At trial, Lee authenticated his signature on each page of his statement to police and testified that he could remember giving the statement. However, he claimed that he could not recall the contents of any conversation with Hutcherson, and the prosecutor sought to use the prior inconsistent statement to refresh

3

his recollection. Because Lee is illiterate, the trial court ultimately allowed the prosecutor to read the statement out loud to Lee in front of the jury. Afterward, Lee stated that he remembered "half of it but not all[.]" *Id*. at 207.

The jury found Hutcherson guilty as charged, but the trial court entered judgment only on the murder, attempted murder, and robbery counts. Hutcherson now appeals. Additional facts will be provided as necessary.

## Discussion and Decision

Hutcherson claims that the trial court's decision to allow the prosecutor to read Lee's prior statement aloud in front of the jury to refresh Lee's recollection violated his constitutional right of confrontation. The State asserts that Hutcherson waived this issue on appeal by failing to raise a specific, contemporaneous objection when the prosecutor read Lee's prior statement in court. Hutcherson counters by arguing that he raised a continuing objection during a bench conference regarding the use of Lee's entire statement. To preserve an admissibility challenge for appeal, a defendant must make a contemporaneous objection at the time the evidence is introduced at trial. *Brown v. State*, 929 N.E.2d 204, 207 (Ind. 2010). As a general rule, "a party must continue to object and obtain a ruling for each individual instance of inadmissible evidence." *Hayworth v. State*, 904 N.E.2d 684, 692 (Ind. Ct. App. 2009). The purpose of the rule is to allow the trial judge to consider the issue in light of any fresh developments and also to correct any errors. *Brown*, 929 N.E.2d at 207. Failure to raise a contemporaneous objection results in waiver. *Id*.

4

That being said, Indiana recognizes continuing objections as a way to avoid the futility and waste of time inherent in requiring repetition of the same unsuccessful objection each time a party offers evidence of a given character. *Hayworth*, 904 N.E.2d at 691-92. The decision whether to grant a continuing objection is a matter for the discretion of the trial court, and objecting counsel must ensure that the continuing objection fully and clearly advises the trial court of the specific grounds for objection. *Id*. at 692. If "the trial court does not specifically grant the right to a continuing objection, it is counsel's duty to object to the evidence *as it is offered* in order to preserve the issue for appeal." *Id*. (emphasis added) (citation omitted).

Here, Hutcherson raised a "continuing objection to any line of questioning from Victor Lee[.]" Tr. at 198. The trial court denied his request for a continuing objection, stating,

> [Y]ou need to make the specific objection because there may be things in that statement that are inadmissible, so you need to make your individualized objections. I would not necessarily let the whole statement in because I don't even know what's in it. I'll take one question at a time.

*Id*. Despite the trial court's ruling, Hutcherson made only one objection during the course of Lee's testimony regarding his prior inconsistent statement. When the State subsequently read aloud from Lee's prior statement, Hutcherson did not object. As such, we conclude that Hutcherson waived this issue for appeal.

In the alternative, Hutcherson asks us to review his claim under the fundamental error exception to the contemporaneous objection rule. The fundamental error exception is "extremely narrow, and applies only when the error constitutes a blatant violation of basic

5

principles, the harm or potential for harm is substantial, and the resulting error denies the defendant fundamental due process." *Brown*, 929 N.E.2d at 207 (citation omitted). This means that the error must be "so prejudicial to the rights of the defendant as to make a fair trial impossible." *Hayworth*, 904 N.E.2d at 694 (citation omitted).

Hutcherson predicates his fundamental error claim upon his constitutional right of confrontation. The Sixth Amendment to the United States Constitution prohibits the admission of testimonial statements by a declarant who is absent from trial and therefore not subject to cross-examination by the accused, unless the declarant is unavailable and the accused had a previous opportunity to cross-examine the declarant. *Crawford v. Washington*, 541 U.S. 36, 59 (2004). The issue of what constitutes unavailability is a question of law, to which we apply a de novo standard of review. *Fowler v. State*, 829 N.E.2d 459, 466-67 (Ind. 2005), *cert. denied*, *abrogated in part on other grounds by Giles v. California*, 554 U.S. 353 (2008). Even if the declarant is unable to recall the events in question, the Confrontation Clause is satisfied as long as the declarant "appears for cross-examination at trial." *Id*. at 464-66 (citation omitted). "The feigned or real absence of memory is itself a factor for the trier of fact to establish, but does not render the witness unavailable." *Id*. at 466. In short, "[t]he Confrontation Clause … generates only an *opportunity* for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish." *Id*. at 469.

Indiana's Confrontation Clause, found in Article 1, Section 13 of the Indiana Constitution, differs from its federal counterpart in that it contemplates a face-to-face

6

meeting in which the accused and the witness can see and recognize one another. *Williams v. State*, 698 N.E.2d 848, 852 (Ind. Ct. App. 1998), *trans. denied.* "Although the accused must have an opportunity to cross-examine the witness during the face to face confrontation, the opportunity does not have to be seized or successful and the right can be waived." *Id.* In *Williams*, the witness was present at trial but was unable to remember what he had previously said. The trial court held that the defendant was still afforded the opportunity to meet the witness face to face and ask him questions.

Here, Lee was face to face with Hutcherson in court and recognized him as a person whom he had known for about a year and a half. Although Lee could not initially recall any specifics concerning the night of the incident, he eventually testified that he could remember about half of the information contained in his prior statement. To the extent that his testimony remained less than unequivocal, such vacillation goes to the weight and not the admissibility of the evidence, a matter that is properly left for the trier of fact. *Morgan v. State*, 445 N.E.2d 585, 587 (Ind. Ct. App. 1983). We reiterate that a defendant's right to confront and cross-examine a witness does not guarantee the *quality* of the cross-examination. *Williams*, 698 N.E.2d at 852. Consequently, Hutcherson's confrontation with and cross-examination of Lee, such as it was, did not violate Hutcherson's constitutional rights.

We now address the unusual circumstance created by Lee's illiteracy. At trial, Lee testified that he knew Hutcherson and that he recalled giving a statement to police. The statement contained Hutcherson's narrative of the events as he recounted them to Lee shortly

7

after they occurred on the night of January 19, 2010. Lee gave his statement to Detective Mark Davis seven weeks later, on March 8, 2010. Detective Davis later testified that the statement accurately reflected what Lee had told him. Tr. at 271-72. When Lee was presented with his prior statement in court, he was able to authenticate his signature at the bottom of each page. Beyond that, however, he claimed that he could not recall anything concerning what Hutcherson had said to him on the night of the incident. At that point, the State sought to use his prior statement to refresh his recollection. Ordinarily, this is accomplished by handing the witness his prior statement, asking him to examine the writing, and then asking whether such examination has refreshed his memory. *Thompson v. State*, 728 N.E.2d 155, 160 (Ind. 2000) (citing 13 ROBERT LOWELL MILLER, JR., INDIANA PRACTICE: INDIANA EVIDENCE § 612.101 at 225-26 (2d ed. 1995)). However, because Lee is illiterate, the prosecutor could not merely hand him the statement to read silently as contemplated by Indiana Evidence Rule 612.

A witness's act of reading his own prior statement under Rule 612 is foundational in the sense that before proceeding, counsel must establish whether such reading was successful in refreshing the witness's memory. *See* 13 ROBERT LOWELL MILLER, JR., INDIANA PRACTICE: INDIANA EVIDENCE § 601.101 at 274-75 (3d ed. 2007). In circumstances involving a blind or illiterate witness, counsel must improvise and may attempt to refresh the witness's recollection by reading the statement aloud. If the jury is present during the reading, its members learn the document's contents before the foundation has been laid.

Thus, to avoid potential prejudice, the preferred methodology would be to excuse the jury prior to such a reading.

Here, the trial court held a bench conference and discussed with counsel the dilemma created by Lee's illiteracy. Thereafter, without excusing the jury, the trial court allowed the prosecutor to refresh Lee's recollection by reading aloud from his statement:

Q. Would you like me to read it to you?

A. Yes, sir.

Q. Your answer was, "Bubba [Hutcherson] told me that he got into it with some dudes from Aetna and he said that he told this dude, I don't know his name, to give me back my hundred dollars. And the dude said that he didn't have his hundred dollars, so Bubba [Hutcherson] said that he took a gun from Mike Lips[c]omb's waist and shot the dude, bam-bam. Then he shot the other dude he was with, bam-bam. Then he said he shot both the dudes two more times and that's when Mike Lips[c]omb ran to the car and Bubba [Hutcherson] said he then went into one of the dude's pockets and took a wallet out of there. And he jumped into his girl's car named Michelle. Michelle drives a black four door Charger. The two back door windows are tinted and the back window is tinted. That's when he drove to Dory Miller, and he saw me standing outside with my cousins and drove up and asked me what I got on a bottle? I jumped in the car with him and then we went to the liquor store and that's when we went to his girl, Michelle's house. We was drinking and that's when he told me the story." Do you recall giving that answer to Detective Mark Davis?

A. I don't recall everything that you said, I don't recall all of it though.

Q. You don't recall any of it?

A. I remember half of it but not all—

Q. Okay. So you remember half of it?

A. Yeah.

9

Tr. at 206-07.

We conclude that the better method would have been for the trial court to excuse the jury prior to the actual reading of the statement in order to avoid potential prejudice. Nevertheless, here, Lee's prior statement was not the bedrock upon which the State's case against Hutcherson was built. Instead, it merely corroborated other testimony on such issues as Hutcherson's anger over losing his money, Johnson's identification of Hutcherson as his and Holland's shooter, Tyson's testimony that she heard gunshots coming from the direction where only the two victims and Hutcherson were, and Tyson's testimony that Hutcherson had possession of a gun shortly after the shootings because he threatened her with it. As such, Lee's statement was cumulative, and any error attributable to its use was therefore harmless. *Borders v. State*, 688 N.E.2d 874, 878 (Ind. 1997).

In sum, we conclude that Hutcherson was afforded the opportunity to meet and question Lee face to face and therefore was not deprived of his right of confrontation under either the federal or state constitutions. Likewise, due to the cumulative nature of the evidence contained in Lee's prior statement, Hutcherson was not prejudiced when it was read aloud to the jury. Accordingly, we affirm.

Affirmed.

VAIDIK, J., and BRADFORD, J., concur.

10