**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



FILED
Sep 23 2013, 5:35 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**KURT A. YOUNG**
Nashville, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**BRIAN REITZ**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| JIMMIE JONES, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 49A04-1303-CR-93 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE MARION SUPERIOR COURT
The Honorable Sheila A. Carlisle, Judge
The Honorable Stanley E. Kroh, Master Commissioner
Cause No. 49G03-1209-FB-67080

**September 23, 2013**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**NAJAM, Judge**

**STATEMENT OF THE CASE**

Jimmie Jones appeals his convictions for one count each of robbery and criminal confinement, as Class B felonies, following a jury trial. Jones presents a single issue for review, namely, whether the trial court improperly admitted hearsay testimony through the investigating officers.

We affirm.

**FACTS AND PROCEDURAL HISTORY**

On September 10, 2012, Zachary Ross[1] was working alone at the Happy Tymz smoking accessory shop in Indianapolis. Shortly before the store's 8:00 p.m. closing time, a regular customer, whom Ross knew only as "Country" but was later identified as Jones, walked into the store and began talking with him. Approximately thirty seconds later, a second man entered the store. The second man was wearing something covering his face and gloves on his hands. The second man turned and held the door, and then Jones produced a small silver handgun from his pocket. Pointing it at Ross's face, he told Ross not to "do anything stupid." Transcript at 49.

Jones pulled Ross into the back room, no more than five feet from where Ross had been standing. Jones then asked Ross where to find the cash register key, and Ross replied that it was in the register. The masked man then took the money from the cash register, a laptop, and other items from the store. Jones demanded Ross' wallet, and Ross complied. Jones and the masked man then left the store through the front door, and Ross called 911.

---

[1] At trial, Ross stated that he has since legally changed his name to "Dude Wanderlust." Transcript at 43. Because the parties and the record refer to him by his former name of Zachary Ross, we do likewise to avoid confusion.

Officer Christopher Cooper of the Indianapolis Metropolitan Police Department ("IMPD") arrived at the store at 7:50 p.m. in response to Ross' 911 call. He asked Ross what had happened, and Ross recounted the details of the robbery. Officer Cooper then summoned IMPD Detective John Green to the scene. Detective Green also interviewed Ross, who related to the detective the events of the robbery. Ross also provided the detective with a video of the robbery made from the store's surveillance cameras.

Based on surveillance video images, Detective Green had a "be on the lookout" flyer of "Country" created and distributed to the public. Amber Pierle, a Marion County employee, saw the flyer, recognized "Country" as Jones, a former client of the probation department where she worked, and contacted Detective Green. The detective then put together a photo array that included a photo of Jones as well as other similar looking individuals. When the detective showed the photo array to Ross, he identified Jones as "Country," one of the men who had robbed the store.

The State charged Jones with one count each of robbery and criminal confinement, as Class B felonies. Ross was the first witness to testify at trial, where he identified Jones as one of the robbers and described what had happened. Next, Officer Cooper testified, and then Detective Green, regarding their investigations. At one point while Officer Cooper was testifying about what Ross reported Jones had said to him, Jones objected on the grounds of hearsay. The trial court initially sustained the objection. The State then responded that the testimony was not being offered for the truth of the matter asserted but, instead, to explain the progression of the investigation. Based on that explanation, the court overruled the objection and admonished the jury accordingly. Jones made no similar objection when Detective Green testified regarding his interview of Ross. The

jury found Jones guilty as charged, and the trial court sentenced him accordingly. Jones now appeals.

## DISCUSSION AND DECISION

Jones contends that the trial court abused its discretion when it admitted the testimony of Officer Cooper and Detective Green regarding their interviews with Ross. Our standard of review of a trial court's admission or exclusion of evidence is an abuse of discretion. Troutner v. State, 951 N.E.2d 603, 611 (Ind. Ct. App. 2011) (citing Speybroeck v. State, 875 N.E.2d 813, 818 (Ind. Ct. App. 2007)), trans. denied. A trial court abuses its discretion only if its decision is clearly against the logic and effect of the facts and circumstances before the court. Id. In reviewing the admissibility of evidence, we consider only the evidence in favor of the trial court's ruling and any unrefuted evidence in the defendant's favor. Id. (citing Dawson v. State, 786 N.E.2d 742, 745 (Ind. Ct. App. 2003), trans. denied).

The State disputes the standard of review. Specifically, the State argues that Jones has not preserved the issue for review and, therefore, we must determine whether the trial court committed fundamental error. Thus, we first examine whether Jones preserved the issue on appeal for review.

The relevant colloquy involving Officer Cooper's trial testimony is as follows:

Q [State]:     What did Mr. Ross tell you?

A:     I don't recall very specifically at the time. It would be in the CAD history that it was a black male, I believe, around 6'2", 200 pounds. I remember there was a gold tooth and a tank top was [sic] suspect number 1. Suspect 2 I believe was going to be a little smaller, little bit lighter in weight. And stated that they [sic] were dressed in all black and covering the face.

4

Q:     Once you got that information what did you do with it?

A:     Broadcast that over the radio so that units in the area could be out looking for those individuals.

Q:     Were you—in your initial discussions with Mr. Ross were you also given information regarding a weapon?

A:     Yes, ma'am.

Q:     Did Mr. Ross tell you which—whether it was the masked or unmasked suspect?

A:     It was the unmasked suspect.  He also stated that he knew that person by a nickname.

Q:     And what was that nickname that he told you?

A:     Country.

Q:     Did he describe the weapon to you?

A:     He said it was a small handgun that would almost fit like in the palm of his hand.  I believe he said he may have said it was silver in color. Again, that would be in my description in the CAD.

Q:     Great.  After getting some preliminary information from Mr. Ross, what did you do next?

A:     After everything was broadcast out, then just started going back over the exact kind of step-by-step what had happened and had him describe the events leading up to before I arrived on scene.

Q:     And at this point had you called for anyone else to come to the scene, or do you get kind of the version first?

A:     Initially I kind of get the quick and dirty of what happened before we break it down into real specifics to find out what appropriate detective to call to the scene.

Q:     Okay.  And what was the quick and dirty version that you were getting?

A:     That the individual he knew as Country came into the store, started speaking with him as he was behind the counter.

5

[Defense counsel]: Judge, I think I'm going to object to this line at this point as hearsay.

The Court: Hearsay? Okay. Sustained.

[State]: If I may just respond that it does not go to the truth of the matter asserted, more just, like the officer said, how his investigation progressed from that point on.

The Court: Okay. Ladies and gentlemen of the jury, what the detective [sic] is saying about what someone else may have told him is only offered to show why the detective [sic] did what he did next, not for the truth of what the other person may or may not have said. So the objection is overruled with that admonition. If you'll continue.

Q: Please continue. What was the short version that you were given initially by Mr. Ross?

A: That Country had come in, started speaking with him as he was behind the counter. Just moments later another male, the one that was all dressed in black came in, pulled the door closed, and then at that time Country produced a weapon and made the statements to the effect of don't make me use this, and then started inquiring about how to access the register.

Q: Once you were given that information, what did you do?

A: He continued his story to tell me that he was then pushed into the back room where the masked individual took the register—got into the register and took the contents of it. Also took the store's computer and a backpack that was sitting there, and then exited the store. Country had him turn around, made some remarks reference [sic[ again the weapon and not making him use it, asked for his wallet, and then he left the store and that's when Mr. Ross called for police.

Transcript at 86-89. Thereafter, Detective Green testified:

Q: Then what was the next step that you took in your investigation?

A: After speaking with Officer Cooper, then I spoke with Mr. Ross who was outside of the business.

Q: When you spoke with Mr. Ross, what type of information were you trying to get from him?

6

A:     I was trying to gather from him exactly what had occurred in the business, the before, the after and during.

Q:     Did you also get suspect information, as well?

A:      Yes, I did.

Q:     And can you tell the jury what suspect information you received from Mr. Ross?

A:     The information that I got from Mr. Ross was two individuals came into the business.  One that he knew or was familiar with, and that individual he was familiar with called Country, and another individual that he did not know and that person's face was concealed and he had on a hoodie and gloves.

Q:     Did he give you more of a description of the person that he knew to be Country, did he give you more of a physical description of him?

A:     Yes, he did.

Q:     What did he give you?

A:     He described him to be approximately six foot, six foot two, in the range of about 230 pounds.  He said he had a gold tooth in his mouth and some facial hair.

Q:     Did he mention a weapon at all?

A:     Yes.

Q:     And what did he—you said he gave you a description of the second person being masked, gloves and a jacket?

A:     Hoodie.

Q:     Now after getting his version of what happened and what he remembered and the suspect information, what was the next step that you took?

A:     He informed me—he went through the whole scenario inside the business, exactly what took place, where he was, where items were inside the business and he explained that he had some video.  He believed he still had some video of the robbery.  I asked him, "Do you have any video?"  He

7

said, "Yes, it's in the bank. [sic] It's on a DVR." And we proceeded to the back where he displayed various camera views or angles of the robbery.

Transcript at 97-99. Jones did not object to Detective Green's testimony.

On appeal, Jones contends that his objection to the "line" of questioning during Officer Cooper's testimony was "plainly an attempt to lodge a continuing objection to the hearsay repetition of Ross' description of the incident, even though he did not specifically ask nor did the court rule one way or the other whether a continuing objection was granted, as ordinarily required." Appellant's Brief at 10. We cannot agree. Jones did not object until Officer Cooper was about to testify about something Jones said to Ross during the robbery. As such, Jones' objection was clearly to testimony about what Jones had said to Ross, not about what Ross had said to Officer Green.[2]

Instead, Jones contends that he objected to "the line" of questioning in which Officer Cooper related what Ross had said happened during the robbery. He concedes that he did not object to Detective Green's testimony on the same topic and argues that his objection to Officer Cooper's testimony had been a continuing objection. Indiana recognizes continuing objections as a way to avoid the futility and waste of time inherent in requiring repetition of the same unsuccessful objection each time a party offers evidence of a given character. Hutcherson v. State, 966 N.E.2d 766, 770 (Ind. Ct. App. 2012) (citation omitted), trans. denied. To avoid the necessity of objecting each time a class of evidence is offered, the objecting party must specify to the trial court that he is making a continuing objection. See Hayworth v. State, 904 N.E.2d 684, 692 (Ind. Ct.

_____

[2] In any case, what Jones may have said during the robbery is not hearsay. Ind. Evidence Rule 801(d)(2). And because Jones did not discuss in his brief on appeal the admissibility of testimony from Ross about what Jones may have said during the robbery, any argument on that issue has been waived. See Ind. Appellate Rule 46(A)(8)(a).

App. 2009). The decision whether to grant a continuing objection is a matter for the discretion of the trial court, and objecting counsel must ensure that the continuing objection fully and clearly advises the trial court of the specific grounds for objection. Hutcherson, 966 N.E.2d at 770. If the trial court does not specifically grant the right to a continuing objection, it is counsel's duty to object to the evidence as it is offered in order to preserve the issue for appeal. Id. (quotations and citation omitted).

We cannot agree with Jones that his objection to the "line" of questions specified to the court that he was making a continuing objection. Nor did the court acknowledge or specifically grant a continuing objection. We conclude that Jones did not make a continuing objection to questioning regarding Ross' police interviews. See id. Thus, while Jones made a single timely objection to Officer's Cooper's testimony, he did not make a continuing objection, and neither did he object to similar testimony by Detective Green, and we review the latter only for fundamental error. To constitute fundamental error, the error must constitute a blatant violation of basic principles, the harm or potential for harm must be substantial, and the resulting error must deny the defendant fundamental due process. Brown v. State, 799 N.E.2d 1064, 1067 (Ind. 2003) (quotation omitted). It must be so prejudicial to the rights of a defendant as to make a fair trial impossible. Id. (quotation omitted).

Here, again, Jones contends that the trial court should not have admitted the police officers' testimony on what Ross told them about the offenses because such was hearsay. Hearsay is "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted," Ind. Evidence Rule 801(c), and is not typically admissible, Evid. R. 802. But our supreme court has

9

held that one exception to this rule is hearsay testimony used to show the steps of an investigation. Spencer v. State, 703 N.E.2d 1053, 1056 (Ind. 1999). In such cases, the "testimony of the officers should be limited to that specific purpose." Id. Such was the case here, where the trial court admonished the jury that Officer Cooper's testimony was offered to show only the steps of his investigation, not the truth of the matter asserted. As such, Jones' argument regarding Officer Cooper's testimony must fail. The same result applies to Detective Green's testimony. As such, Jones has not shown that the trial court erred, let alone committed fundamental error, when it admitted Detective Green's testimony about Ross' description of the robbery.

Finally, we also observe that Officer Cooper and Detective Green testified after Ross had already given his testimony describing the robbery. As such, the officers' testimony was cumulative. Admission of hearsay evidence is not grounds for reversal where it is merely cumulative of other evidence admitted. VanPatten v. State, 986 N.E.2d 255, 267 (Ind. 2013). Thus, even if the trial court had erred in admitting the officers' testimony, which it did not, such would not have been error. We affirm Jones' convictions for robbery and criminal confinement.

Affirmed.

MATHIAS, J., and BROWN, J., concur.