## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Jan 25 2018, 10:13 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Alice Bartanen Blevins
Salem, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Michael Gene Worden
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Jeff L. Graham,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff.*

January 25, 2018

Court of Appeals Case No.
88A04-1703-CR-490

Appeal from the Washington
Circuit Court

The Honorable Larry W. Medlock,
Judge

Trial Court Cause No.
88C01-1209-FD-673

**Pyle, Judge.**

# Statement of the Case

Jeff L. Graham ("Graham") appeals his conviction, following a jury trial, for Class D felony possession of marijuana.[1] Graham argues that: (1) the trial court abused its discretion by admitting evidence at trial; (2) the evidence is insufficient to support his conviction; and (3) his sentence is inappropriate. Because we conclude that: (1) Graham has waived appellate review of his challenge to the admission of evidence; (2) the evidence is sufficient to support his conviction; and (3) his sentence is not inappropriate, we affirm his conviction and sentence.

We affirm.

# Issues

1. Whether Graham has waived appellate review of his challenge to the admission of evidence.

2. Whether sufficient evidence supports Graham's conviction.

3. Whether Graham's sentence is inappropriate.

# Facts

On August 17, 2012, Detective Mike Bennett ("Detective Bennett"), who was the coordinator of the marijuana eradication unit of the Indiana State Police, flew over land in Washington County near Keltner Road in a Black Hawk

---

[1] IND. CODE § 35-48-4-11. We note that, effective July 1, 2014, a new version of the possession of marijuana statute was enacted and that Class D felony possession of marijuana is now a Level 6 felony. Because Graham committed his offense in August 2012, we will apply the statute in effect at that time.

helicopter. Detective Bennett located some suspected marijuana plants near a residence, which was later identified as Graham's residence, and a "well[-]worn trail" leading from the residence to the location of the plants. (Tr. 16). The detective had the helicopter land and conducted an "open field search" to confirm that the plants were marijuana plants. (Tr. 16). As the helicopter landed, Detective Bennett saw a white male leave the residence and drive away in a dark-colored car. Once on the ground, Detective Bennett confirmed that the plants were indeed marijuana, and he saw an additional seventeen marijuana plants that were planted in pots along a foot path that led from the residence.

[4] Detective Bennett then obtained a search warrant for Graham's residence and curtilage. When executing the search warrant, the detective saw that there were five additional marijuana plants mingled among some tomato plants in the garden that was fifteen yards from Graham's residence. The marijuana plants in the garden were the largest of the plants that Detective Bennett found on Graham's property and were visible from Graham's residence. Detective Bennett also found evidence of a marijuana-growing operation, including a "grow table" with fluorescent lights and "mylar reflective lining" located in an out-building and some potting soil and some empty pots near the back door of the residence. (Tr. 21, 22). The detective seized a total of twenty-four marijuana plants in varying stages of maturity and determined that Graham owned the two parcels of property where the marijuana plants were found. The total weight of the marijuana seized was 341.2 grams.

[5] The State charged Graham with Class D felony possession of marijuana.[2] The State alleged that Graham: (1) possessed marijuana; (2) grew or cultivated marijuana; or (3) failed to destroy marijuana plants that he knew were growing on his premises, and it alleged that the amount of marijuana involved was more than thirty grams. Thereafter, in January 2013, Graham filed a motion to suppress. Graham did not include a copy of the motion in his Appellant's Appendix. The trial court held a hearing and ultimately denied Graham's motion to suppress.

[6] The trial court held a jury trial in January 2017. Detective Bennett testified to the facts contained above. When the State moved to admit the photographs of the marijuana plants found on Graham's property and the bag containing the actual marijuana seized, Graham stated that he had "[n]o objection" to the admission of the evidence. (Tr. 17, 19, 55). Additionally, when the State moved to admit the State Police Lab report, indicating that the plants found on Graham's property were marijuana with a net weight of 341.2 grams, Graham's counsel stated, "No objection, your Honor." (Tr. 57). Nor did Graham object to the detective's testimony regarding the marijuana found on Graham's property.

[7] During the trial, Graham testified on his own behalf. He acknowledged that he owned the two parcels of land where the marijuana was found. Graham

---

[2] The State filed the charging information in September 2012 and amended it in January 2016.

testified that the marijuana plants were not his, and he denied any knowledge of the marijuana plants. Graham testified that his neighbors and other people had access to his property, suggesting that someone else could have planted the marijuana.

[8] The jury found Graham guilty as charged. The trial court imposed a three (3) year sentence, with two (2) years, nine (9) months executed and three (3) months suspended. The trial court informed Graham that it would give him the opportunity to file a petition to modify his sentence after the completion of one year of incarceration, pending Graham's behavior during that time. Graham now appeals.

# Decision

[9] Graham argues that: (1) the trial court abused its discretion by admitting evidence seized during the execution of a search warrant; (2) the evidence is insufficient to support his conviction; and (3) his sentence is inappropriate. We will review each argument in turn.

### 1. Admission of Evidence

[10] Graham first challenges the admission of evidence during his jury trial. The admission and exclusion of evidence falls within the sound discretion of the trial court, and we review the admission of evidence only for an abuse of discretion. *Wilson v. State*, 765 N.E.2d 1265, 1272 (Ind. 2002). An abuse of discretion occurs when the trial court's decision is clearly against the logic and

effect of the facts and circumstances before it. *Conley v. State*, 972 N.E.2d 864, 871 (Ind. 2012), *reh'g denied*.

[11] Graham contends generally that the trial court erred by allowing "evidence" to be admitted during the jury trial. (Graham's Br. 6). He, however, does not specify the exact evidence that he contends was erroneously admitted. Because Graham has failed to provide relevant, cogent argument, we conclude that he has waived any challenge to the admission of evidence. *See* Ind. Appellate Rule 46(A)(8)(a) (requiring an appellant to support an argument with cogent argument).

[12] Even if Graham had specified that he was challenging the admission of the marijuana into evidence, he has still waived any appellate challenge to the admission of the marijuana-related evidence because he did not object to the admission of such evidence at trial. In order to preserve a challenge to the admissibility of evidence for appeal, "a defendant *must* make a contemporaneous objection at the time the evidence is introduced at trial." *Hutcherson v. State*, 966 N.E.2d 766, 770 (Ind. Ct. App. 2012) (emphasis added), *trans. denied*. *See also* Ind. Evidence Rule 103(a)(1) (providing that a "party may claim error in a ruling to admit . . . evidence *only if* . . . [the] party, on the

record[,] . . . *timely objects* . . . and . . . states the specific ground" for the objection) (emphases added).[3]

[13] Here, when the State moved to admit evidence relating to the marijuana found on Graham's property (including the actual bag containing the marijuana, the photographs of the marijuana, and the lab report confirming that the plants found on Graham's property were marijuana with a net weight of 341.2 grams), Graham did not object. In fact, Graham affirmatively stated that he had "[n]o objection" to the admission of this evidence. (Tr. 17, 19, 55, 57). An "'appellant cannot on the one hand state at trial that he has no objection to the admission of evidence and thereafter in this Court claim such admission to be erroneous.'" *Halliburton v. State*, 1 N.E.3d 670, 678-79 (Ind. 2013) (quoting *Harrison v. State*, 258 Ind. 359, 363, 281 N.E.2d 98, 100 (1972)). Consequently, Graham has waived appellate review of his claim of error. *See, e.g.*, *Brown v. State*, 929 N.E.2d 204, 207 (Ind. 2010) (holding that defendant, who did not object to evidence upon introduction of evidence and who affirmatively stated he had no objection, waived review of his argument that evidence was unlawfully seized), *reh'g denied*; *Nowling v. State*, 961 N.E.2d 34, 35 (Ind. Ct. App. 2012) (holding that a defendant had waived appellate challenge to the

---

[3] We note that there is a limited exception—not applicable here—to the requirement to continuously object at trial. Specifically, Indiana Evidence Rule 103(b), which became effective January 1, 2014, provides that "[o]nce the court rules definitively on the record at trial a party need not renew an objection . . . to preserve a claim of error for appeal."

admission of evidence by stating "no objection" when the evidence was offered for admission), *trans. denied*.

[14] Nevertheless, "[a] claim that has been waived by a defendant's failure to raise a contemporaneous objection can be reviewed on appeal if the reviewing court determines that a fundamental error occurred." *Brown*, 929 N.E.2d at 207. *See also Konopasek v. State*, 946 N.E.2d 23, 27 (Ind. 2011) ("'Failure to object to the admission of evidence at trial normally results in waiver and precludes appellate review unless its admission constitutes fundamental error.'") (quoting *Cutter v. State*, 725 N.E.2d 401, 406 (Ind. 2000), *reh'g denied*).

[15] "The fundamental error exception is 'extremely narrow, and applies only when the error constitutes a blatant violation of basic principles, the harm or potential for harm is substantial, and the resulting error denies the defendant fundamental due process.'" *Brown*, 929 N.E.2d at 207 (quoting *Mathews v. State*, 849 N.E.2d 578, 587 (Ind. 2006)). The *Brown* Court explained that a showing of fundamental error arising from the admission of alleged illegally seized evidence is very limited:

> [A]n error in ruling on a motion to exclude improperly seized evidence is not per se fundamental error. Indeed, because improperly seized evidence is frequently highly relevant, its admission ordinarily does not cause us to question guilt. That is the case here. The only basis for questioning Brown's conviction lies not in doubt as to whether Brown committed these crimes, but rather in a challenge to the integrity of the judicial process. We do not consider that admission of unlawfully seized evidence ipso facto requires reversal. Here, there is no claim of fabrication of evidence or willful malfeasance on the part of the investigating

officers and no contention that the evidence is not what it appears to be. In short, the claimed error does not rise to the level of fundamental error.

*Brown*, 929 N.E.2d at 207.

[16] Just as in *Brown*, Graham does not assert any such claims in this case. Indeed, Graham fails to acknowledge his lack of objection during his jury trial and does not assert that the admission of the evidence constituted fundamental error. Instead, Graham merely asserts that the evidence was improperly admitted, alleging that the detective should have used a different address for the search warrant.[4] Thus, Graham's claim of error does not rise to the level of fundamental error. *See id.* (holding that a claim of error asserting that evidence was unlawfully seized, without more, does not constitute fundamental error). Because Graham affirmatively stated that he had no objection to the admission of the evidence at issue and has failed to demonstrate any fundamental error in the admission of the evidence, we need not address Graham's evidentiary challenge. *See, e.g.*, *id.* at 208 (explaining that it is not necessary to resolve the issue of whether a search was lawful where the defendant had failed to preserve the issue by failing to object and where there was no fundamental error).

## 2. Sufficiency of Evidence

---

[4] Graham contends that the detective should have used Graham's address listed on property records instead of his address listed on his driver's license.

[17]    Graham argues that the evidence was insufficient to support his conviction for Class D felony possession of marijuana.

> When reviewing the sufficiency of the evidence to support a conviction, appellate courts must consider only the probative evidence and reasonable inferences *supporting* the verdict. It is the fact-finder's role, not that of appellate courts, to assess witness credibility and weigh the evidence to determine whether it is sufficient to support a conviction. To preserve this structure, when appellate courts are confronted with conflicting evidence, they must consider it most favorably to the trial court's ruling. Appellate courts affirm the conviction unless no reasonable fact-finder would find the elements of the crime proven beyond a reasonable doubt. It is therefore not necessary that the evidence overcome every reasonable hypothesis of innocence. The evidence is sufficient if an inference may reasonably be drawn from it to support the verdict.

*Drane v. State*, 867 N.E.2d 144, 146-47 (Ind. 2007) (internal quotation marks and citations omitted) (emphasis in original). Additionally, our Indiana Supreme Court has explained that "when determining whether the elements of an offense are proven beyond a reasonable doubt, a fact-finder may consider both the evidence *and the resulting reasonable inferences*." *Thang v. State*, 10 N.E.3d 1256, 1260 (Ind. 2014) (emphasis in original).

[18]    At the time of Graham's offense, the possession of marijuana statute provided, in relevant part, that:

> A person who:
>
> > (1) knowingly or intentionally possesses (pure or adulterated) marijuana . . . ;

> (2) knowingly or intentionally grows or cultivates marijuana; or
>
> (3) knowing that marijuana is growing on the person's premises, fails to destroy the marijuana plants;
>
> commits possession of marijuana . . . , a Class A misdemeanor. However, the offense is a Class D felony if the amount involved is more than thirty (30) grams of marijuana[.]

I.C. § 35-48-4-11. To convict Graham as charged, the State was required to prove that Graham: (1) knowingly or intentionally possessed marijuana; (2) knowingly or intentionally grew or cultivated marijuana; or (3) failed to destroy marijuana plants that he knew were growing on his premises and that the amount of marijuana involved was more than 30 grams.

[19] Graham does not dispute that marijuana plants, with a net weight of 341.2 grams, were found on two parcels of his property. Instead, he contends that the State "failed to prove that Graham had the intent to commit the Felony alleged, as there was no[] evidence offered establishing actual knowledge of Graham as to the presence of the plants, nor that he was a cultivator of the plants." (Graham's Br. 8). Graham also suggests that the marijuana plants found on his property should not have been combined and should have been "weighed separately" to "identify the weight of the marijuana as it relates to the likelihood of Mr. Graham's actual possession and cultivation of the plants." (Graham's Br. 8). The State, on the other hand, argues that the evidence was sufficient to show that Graham "constructively possessed the marijuana plants

found on the property that he exclusively possessed." (State's Br. 18). We agree with the State.

[20] "[A] conviction for a possessory offense does not depend on catching a defendant red-handed." *Gray v. State*, 957 N.E.2d 171, 174 (Ind. 2011). It is well-established that possession of an item may be either actual or constructive. *See Lampkins v. State*, 682 N.E.2d 1268, 1275 (Ind. 1997), *modified on reh'g*, 685 N.E.2d 698 (Ind. 1997). Constructive possession, which is applicable in this case, occurs when a person has: (1) the capability to maintain dominion and control over the item; and (2) the intent to maintain dominion and control over it. *Id.*

[21] The capability element of constructive possession is met when the State shows that the defendant is able to reduce the controlled substance to the defendant's personal possession. *Goliday v. State*, 708 N.E.2d 4, 6 (Ind. 1999). Additionally, "[a] trier of fact may infer that a defendant had the capability to maintain dominion and control over contraband from the simple fact that the defendant had a possessory interest in the premises on which an officer found the item." *Gray*, 957 N.E.2d at 174. *See also Goliday*, 708 N.E.2d at 6 (explaining that "[p]roof of a possessory interest in the premises in which the illegal drugs are found is adequate to show the capability to maintain control and dominion over the items in question").

[22] The intent element of constructive possession is shown if the State demonstrates the defendant's knowledge of the presence of the contraband. *Goliday,* 708

N.E.2d at 6. A defendant's knowledge may be inferred from either the exclusive dominion and control over the premises containing the contraband, or if the control is non-exclusive, evidence of additional circumstances pointing to the defendant's knowledge of the presence of contraband. *Id.* These additional circumstances may include: "(1) a defendant's incriminating statements; (2) a defendant's attempting to leave or making furtive gestures; (3) the location of contraband like drugs in settings suggesting manufacturing; (4) the item's proximity to the defendant; (5) the location of contraband within the defendant's plain view; and (6) the mingling of contraband with other items the defendant owns." *Gray*, 957 N.E.2d at 175.

[23] Turning to the capability element, we note that the evidence is undisputed that that the marijuana plants were found on Graham's property. Indeed, Graham admitted that he owned the two parcels of property on which the marijuana plants were found, and he testified that he was the only person who lived there. Graham's possessory interest in the premises where the marijuana was found is adequate to show the capability to maintain control and dominion over the marijuana. *See also Goliday*, 708 N.E.2d at 6 (explaining that "[p]roof of a possessory interest in the premises in which the illegal drugs are found is adequate to show the capability to maintain control and dominion over the items in question").

[24] There was also sufficient evidence to satisfy the intent element of constructive possession. Here, the evidence revealed that Graham had exclusive control and possession of the property where the marijuana was found. He owned the

parcels of property where the twenty-four marijuana plants were found, and he lived alone in the house on the property. Moreover, five of the marijuana plants were mingled among tomato plants in Graham's garden, which was fifteen yards from his house. Detective Bennett testified that the marijuana plants in the garden were the largest of the plants found on Graham's property and were visible from Graham's residence. Seventeen marijuana plants were planted in pots along a foot path that led from the residence. Detective Bennett also found evidence of a marijuana-growing operation, including a "grow table" with florescent lights and "mylar reflective lining" located in an out-building and some potting soil and some empty pots near the back door of the residence. (Tr. 21, 22). Thus, Graham's knowledge of the presence of the contraband, and his resulting intent for purposes of constructive possession, could have been inferred from his exclusive control of the property or from evidence of additional circumstances pointing to Graham's knowledge of the presence of contraband. *See Goliday,* 708 N.E.2d at 6 (explaining that the intent element of constructive possession is shown if the State demonstrates the defendant's knowledge of the presence of the contraband, and this knowledge may be inferred from either the exclusive dominion and control over the premises or by evidence of additional circumstances pointing to the defendant's knowledge of the presence of contraband). From the evidence presented at trial, the jury could have reasonably determined that Graham had the intent to maintain dominion and control and that he constructively possessed the contraband. Accordingly, we affirm Graham's possession of marijuana conviction.

### 3. Inappropriate Sentence

[25] Graham contends that his three (3) year sentence, with two (2) years, nine (9) months executed and three (3) months suspended was inappropriate.

[26] We may revise a sentence if it is inappropriate in light of the nature of the offense and the character of the offender. Ind. Appellate Rule 7(B). The defendant has the burden of persuading us that his sentence is inappropriate. *Childress v. State*, 848 N.E.2d 1073, 1080 (Ind. 2006). The principal role of a Rule 7(B) review "should be to attempt to leaven the outliers, and identify some guiding principles for trial courts and those charged with improvement of the sentencing statutes, but not to achieve a perceived 'correct' result in each case." *Cardwell v. State*, 895 N.E.2d 1219, 1225 (Ind. 2008). "Appellate Rule 7(B) analysis is not to determine whether another sentence is more appropriate but rather whether the sentence imposed is inappropriate." *Conley*, 972 N.E.2d at 876 (internal quotation marks and citation omitted).

[27] When determining whether a sentence is inappropriate, we acknowledge that the advisory sentence "is the starting point the Legislature has selected as an appropriate sentence for the crime committed." *Childress*, 848 N.E.2d at 1081. Here, Graham was convicted of Class D felony possession of marijuana. A Class D felony had sentencing range of six (6) months to three (3) years with an advisory sentence of one and one-half (1½) years. I.C. § 35-50-2-7. The trial court imposed a sentence of three (3) years, with two (2) years, nine (9) months executed and three (3) months suspended. The trial court informed Graham

that it would give him the opportunity to file a petition to modify his sentence after the completion of one year of incarceration, pending Graham's behavior during that time.

[28] Graham fails to address how the nature of his offense and his character render his sentence inappropriate.[5] Because he has failed to provide relevant, cogent argument, we conclude that he has waived this sentencing challenge. *See* Ind. Appellate Rule 46(A)(8)(a) (requiring an appellant to support an argument with cogent argument). *See also Foutch v. State*, 53 N.E.3d 577, 580 n.1 (Ind. Ct. App. 2016) (waiving a defendant's sentencing argument where he failed to provide a cogent argument).

[29] Waiver notwithstanding, Graham's sentence is not inappropriate. The nature of Graham's offense involved his possession of a large amount of marijuana. He had twenty-four marijuana plants growing on various locations on his property, and the total weight of the marijuana seized was 341.2 grams, which was well above the thirty-gram requirement for the commission of a Class D felony.

[30] Turning to the nature of Graham's character, we note that he has a prior criminal history, including convictions and pending charges. Specifically,

---

[5] Graham merely contends that the trial court's consideration of Graham's pending charges in other causes was "inappropriate and led to an excessive sentence beyond what is reasonable[.]" (Graham's Br. 9). This argument is without merit. *See Bacher v. State*, 722 N.E.2d 799, 804 (Ind. 2000) (explaining that a trial court may properly consider as an aggravating circumstance prior arrests and pending charges not reduced to convictions because they reflect the defendant's character and indicate a risk of future crime).

Graham had misdemeanor convictions for battery in 1987 and 1990, driving while intoxicated in 1993, operating while intoxicated in 2015, and conversion in 2016.[6] For Graham's conversion conviction, the trial court had ordered him to serve part of his sentence in a day reporting program; however, Graham was rejected by the program because he was "verbally abusive and combative" with the case manager. (App. Vol. 2 at 48). During the sentencing hearing, the trial court informed Graham that his rejection by the day reporting program due to Graham's act of being "belligerent and hostile" toward the case manager "said a lot" to the trial court about Graham's character. (Tr. 108). Additionally, Graham had the following two pending charges in two separate causes filed in 2012: (1) Class D felony intimidation; and (2) Class A misdemeanor trespass. Moreover, as noted by the State during sentencing, Graham committed other offenses while being out on bond in this and in other causes, and he has previously violated probation. Graham's character reveals a disregard for the law and the authority of the courts. Graham has not persuaded us that his sentence is inappropriate. Therefore, we affirm the sentence imposed by the trial court.

[31] Affirmed.

Riley, J., and Robb, J., concur.

---

[6] Graham also had convictions in 2007 for failure to pay as agreed, cutting timber not purchased, and committing a fraudulent act that were later dismissed in 2009 after he complied with an agreement to pay restitution.